<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-2337

                     KKW ENTERPRISES, INC.,

                      Plaintiff, Appellee,

                               v.

                 GLORIA JEAN'S GOURMET COFFEES
                       FRANCHISING CORP.,

                     Defendant, Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF RHODE ISLAND

          [Hon. Ernest C. Torres, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                Campbell, Senior Circuit Judge,

                   and Boudin, Circuit Judge.

                     _____________________

   Frederic A. Cohen, with whom Norman M. Leon, Rudnick & Wolfe,
William M. Dolan III, Angel Taveras and Brown, Rudnick, Freed &
Gesmer were on brief, for appellant.
   George E. Lieberman, with whom Tillinghast Licht & Semonoff
Ltd was on brief, for appellee.

                      ____________________

                         July 19, 1999
                      ____________________

        TORRUELLA, Chief Judge.   Defendant-appellant, Gloria
Jean's Gourmet Coffees Franchising Corp. ("Gloria-Jean's"), appeals
the district court's order partially granting the motion of
plaintiff-appellee, KKW Enterprises, Inc. ("KKW"), to stay
arbitration as to claims under the Rhode Island Franchise
Investment Act, R.I. Gen. Laws  19-28.1-14 ("statutory claims"),
and its order denying Gloria Jean's motion to stay proceedings
pending arbitration as to the statutory claims.
                           BACKGROUND
        Gloria Jean's is an Illinois corporation with its
principal place of business in Castroville, California.  Gloria
Jean's grants franchises to qualified persons to operate Gloria
Jean's Gourmet Coffee Stores throughout the United States.  KKW is
a franchisee of Gloria Jean's.
        On November 25, 1992, KKW entered into franchise
agreements with Gloria Jean's pursuant to which Gloria Jean's
granted KKW limited licenses to operate Gloria Jean's franchises at
the Independence Mall in Kingston, Massachusetts and in the
Northshore Shopping Center, in Peabody, Massachusetts.  KKW
subsequently entered into two subsequent franchise agreements with
Gloria Jean's to operate Gloria Jean's Gourmet Coffee Stores in
Square One Mall, in Saugus, Massachusetts, and at the University
Mall in South Burlington, Vermont.
         The franchise agreements were heavily negotiated.  KKW
was represented by counsel in connection with those negotiations,
and KKW's counsel proposed various changes to the franchise
agreements, all of which were incorporated into those agreements.  
None of the changes to the franchise agreements which KKW's counsel
proposed during these negotiations concerned the arbitration
agreements or the selection of Chicago as the forum for arbitration
of disputes under the agreements.
        In entering into each of the franchise agreements, the
parties explicitly agreed that they would submit all disputes
arising out of or relating to the franchise agreements, the
validity of those agreements, or the parties' relationship to
arbitration before the American Arbitration Association ("AAA").  
Paragraph 18.B of each franchise agreement, in pertinent part,
states:
                 EXCEPT INSOFAR AS THE FRANCHISOR AS PROVIDED
        IN PARAGRAPH A OF THIS SECTION ELECTS TO
        ENFORCE THIS AGREEMENT OR ANY OTHER RELATED
        AGREEMENT, ALL CONTROVERSIES, DISPUTES OR
        CLAIMS ARISING BETWEEN THE FRANCHISOR, ITS
        AFFILIATES, OFFICERS, DIRECTORS, AGENTS,
        EMPLOYEES AND ATTORNEYS (IN THEIR
        REPRESENTATIVE CAPACITY) AND THE FRANCHISEE
        (ITS OWNERS AND GUARANTORS, IF APPLICABLE)
        ARISING OUT OF OR RELATED TO: (1) THIS
        AGREEMENT OR ANY PROVISION THEREOF OR ANY
        RELATED AGREEMENT; (2) THE RELATIONSHIP OF THE
        PARTIES HERETO; (3) THE VALIDITY OF THIS
        AGREEMENT OR ANY RELATED AGREEMENT, OR ANY
        PROVISION THEREOF; OR (4) ANY SPECIFICATION,
        STANDARD OR OPERATING PROCEDURE RELATING TO
        THE ESTABLISHMENT OR OPERATION OF THE
        FRANCHISE SHALL BE SUBMITTED FOR ARBITRATION
        TO BE ADMINISTERED BY THE CHICAGO, ILLINOIS
        OFFICE OF THE AMERICAN ARBITRATION ASSOCIATION
        ON DEMAND OF EITHER PARTY.  SUCH ARBITRATION
        PROCEEDINGS SHALL BE CONDUCTED IN CHICAGO,
        ILLINOIS AND, EXCEPT AS OTHERWISE PROVIDED IN
        THIS AGREEMENT, SHALL BE CONDUCTED IN
        ACCORDANCE WITH THE THEN CURRENT COMMERCIAL
        ARBITRATION RULES OF THE AMERICAN ARBITRATION
        ASSOCIATION.

        On May 7, 1998, KKW filed a ten count complaint against
Gloria Jean's in the Superior Court of the State of Rhode Island
for Providence County.  That action was removed by Gloria Jean's to
the United States District Court for the District of Rhode Island
on June 4, 1998.  KKW's complaint alleges that Gloria Jean's
fraudulently induced it to enter into certain franchise agreements
by misrepresenting: (1) its ability to obtain favorable leases; (2)
its ability to obtain certain types of store locations; and (3) the
success of another franchise.  Claiming that it relied upon these
alleged misrepresentations in entering into its franchise
agreements with Gloria Jean's, KKW's complaint seeks damages for
the losses it purportedly incurred in obtaining and operating its
Gloria Jean's Stores, and rescission of its two remaining franchise
agreements.
        KKW's complaint asserts four claims for damages: (1)
intentional misrepresentation (Count I); (2) breach of fiduciary
duty (Count V); (3) violation of the Rhode Island Franchise
Investment Act (Count VII) and violation of the Rhode Island
Franchise and Distributorship Investment Regulations Act (Count
IX); and (4) six claims which it contends entitles it to rescission
of its remaining franchise agreements -- intentional
misrepresentation (Count II), negligent misrepresentation (Count
III), innocent misrepresentation (Count IV), breach of fiduciary
duty (Count VI), violation of the Rhode Island Franchise Investment
Act (Count VIII) and violation of the Rhode Island Franchise and
Distributorship Investment Regulations Act (Count X).
        On June 11, 1998, Gloria Jean's moved, pursuant to
Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C.  3, to
stay the district court action pending arbitration.  At the
August 7, 1998 hearing on that motion, the district court concluded
that all of the claims set forth in KKW's Complaint were referable
to arbitration under the parties' written arbitration agreements.  
The district court nonetheless denied Gloria Jean's Motion to Stay
as premature, concluding that the arbitration agreements required,
as a condition precedent to arbitration, that Gloria Jean's not
only move to stay the litigation, but actually "demand"
arbitration.
        Immediately after the August 7, 1998 hearing, on
August 11, 1998, Gloria Jean's filed a Demand for Arbitration with
the Chicago, Illinois office of the American Arbitration
Association seeking a declaration that it has no liability for the
claims asserted in KKW's Complaint.  Gloria Jean's also demanded,
by letter of the same date, that KKW submit the claims pending in
the district court, as well as any other claims encompassed by the
parties' arbitration agreements, to arbitration in accordance with
the terms of those agreements.  On August 12, 1998, Gloria Jean's
filed a Renewed Motion to Stay Proceedings Pending Arbitration.
        On September 1, 1998, KKW moved to stay the arbitration
proceeding Gloria Jean's had commenced.  On October 23, 1998, oral
argument was held before the district court on both Gloria Jean's
Renewed Motion to Stay Proceedings Pending Arbitration and KKW's
Motion to Stay Arbitration.  By Order dated November 4, 1998, the
district court, inter alia, (1) granted Gloria Jean's Motion to
Stay Proceedings Pending Arbitration as to KKW's non-statutory
claims; (2) denied the Motion as to KKW's statutory claims; (3)
granted KKW's Motion to Stay the arbitration in Chicago, Illinois
as to KKW's statutory claims; and (4) denied that Motion as to the
non-statutory claims.
        Addressing KKW's common-law claims, the Court stated that
"[t]here's no question in the Court's mind that the dispute here,
or the core of the dispute, at least, [sic] the non-statutory
claims that are asserted by the Plaintiff are arbitrable."  The
district court further stated, however, that its conclusion that
KKW's non-statutory claims were arbitrable did not "answer the
question as to where the arbitration should take place as to those
claims, nor does it answer the question regarding [the
arbitrability of] the statutory claims."
        In discussing this question, the district court first
stated that "[t]he Federal Arbitration Act does not preempt
provisions in an agreement to arbitrate that deal with the
mechanics of the arbitration, where are they to take place, where
the arbitration is to take place and the like."  For this reason,
the district court concluded, it was required to determine the
validity of the arbitration agreements' choice-of-forum clause in
light of the standards set forth by the United States Supreme Court
in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972).  Noting
the strong presumption in favor of forum selection clauses
established by that decision and the similarly strong relationship
between Illinois and the underlying dispute, the district court
concluded, at least with respect to KKW's non-statutory claims,
that there was no basis for disregarding the parties' agreement to
arbitrate their disputes before the Chicago office of the AAA.  
Accordingly, the district court granted Gloria Jean's Motion to
Stay Proceedings Pending Arbitration as to KKW's non-statutory
claims, and denied KKW's motion to stay the arbitration of those
claims.
        KKW's statutory claims, the district court stated,
presented a "different situation."   Relying on  19-28.1-14 of the
Rhode Island Franchise Investment Act, the district court stated
that because "[t]he Rhode Island General Assembly has,
specifically, stated a strong policy against provisions that
restrict jurisdiction or venue to a forum outside of this State,"
the choice-of-forum provision in the parties' arbitration
agreements was "invalid and unenforceable" with respect to KKW's
statutory claims.  Gloria Jean's Motion to Stay was therefore
denied as to those claims.
        On November 20, 1998, the district court issued an
Amended Order Granting in Part and Denying in Part Motions for
Stays and Enlargements of Time.  In that November 20 Amended Order,
the district court amended its ruling regarding Gloria Jean's
Motion to Stay, as follows:
                   The defendant Gloria Jean's motions to stay
        these proceedings pending the outcome of
        arbitration in Chicago is granted with respect
        to the non-statutory claims set forth in
        Counts I-VI [of KKW's Complaint].  The motion
        is denied with respect to the statutory claims
        set forth in Counts VII-X without prejudice to
        being renewed if and when arbitration is
        demanded in a forum permitted by Gen. Laws
        R.I.  19-28.1-14.

Gloria Jean's filed its Notice of Appeal on December 4, 1998.
                           DISCUSSION
I.  Jurisdiction
        KKW argues that this Court lacks jurisdiction over the
appeal.  It alleges that: (1) the district court's amended order
simply gives preference to arbitration over litigation and does not
enjoin arbitration from proceeding; (2) an order declining to
enforce a forum selection clause is not appealable; and (3) Gloria
Jean's conduct in connection with the Pre-Trial Conference, its
failure to timely inform the district court of its petition
concerning staying the proceedings, and its repeated requests for
extensions of time to respond to the complaint and discovery
forfeited any right it might have had to a pre-trial appeal and
waived any right to arbitrate.  We disagree.
        In its November 4, 1998 Order addressing KKW's Motion to
Stay the arbitration proceeding which Gloria Jean's had commenced
before the AAA in Chicago, the district court stated: "The Motion
of Plaintiff [KKW] to Stay Arbitration in Chicago, Illinois . . .
is granted as to the statutory claims."  The district court
reiterated its stance in its November 20, 1998 Amended Order,
stating: "The plaintiff KKW's motion to stay arbitration in Chicago
is denied with respect to the non-statutory claims and granted with
respect to arbitration of the statutory claims in Chicago."
        The district court's orders stayed a pending arbitration
proceeding and are immediately appealable.  See PCS 2000 LP v.
Romulus Telecomm., Inc., 148 F.3d 32, 34 (1st Cir. 1998) ("Because
the district court's stay order is in the nature of an injunction,
we have appellate jurisdiction."); see also 9 U.S.C.  16(a)(2)
(authorizing an immediate appeal from "an interlocutory order
granting . . . an injunction against an arbitration that is subject
to this title"); 28 U.S.C.  1292(a)(1) (permitting interlocutory
appeals from injunctions).
        Similarly, the district court's orders are appealable so
far as they refuse to stay the district court's own litigation on
issues subject to arbitration under an agreement governed by the
FAA.  Section 3 of the FAA expressly provides that if suit is
brought on an issue referable to arbitration under a written
agreement, the court shall stay the matter until arbitration "has
been had in accordance with the terms of the Agreement."  9 U.S.C.
3.  And the statute further provides that an appeal may be taken
from an order "refusing to stay any action under Section 3 of this
title."  9 U.S.C.  16.
        KKW says that "all Gloria Jean's needs to do in order to
have the statutory claims arbitrated is simply to demand
arbitration."  (KKW Br. at 18).  However, Gloria Jean's has already
demanded arbitration, and the district court has refused either to
compel arbitration on KKW's statutory claims or to stay its own
litigation as to those claims.  Since both the district court and
KKW recognize that all the claims set forth in KKW's complaint fall
within the scope of the arbitration agreements, the district
court's action is in both respects immediately appealable.
        KKW also says that the district court's November 20 Order
is not truly an order staying or enjoining arbitration but is
merely an order declining to enforce a forum selection clause.  
This claim is wrong.  "Under the FAA, the court must order the
parties to arbitrate 'in accordance with the terms of the
agreement'; one term of the agreement is the parties' forum
selection clause."  Synder v. Smith, 736 F.2d 409, 418 (7th Cir.)
(footnote omitted), cert. denied, 469 U.S. 1037 (1984), overruled
on other grounds, Felzer v. Andreas, 134 F.3d 873 (7th Cir. 1998).
        Finally, KKW contends that Gloria Jean's forfeited any
right it might have had to a pre-trial appeal and waived any right
to arbitrate through: (1) its conduct in connection with the Pre-
Trial Conference; (2) its failure to timely inform the district
court of its petition concerning staying proceedings; and (3) its
repeated requests for extensions of time to respond to the
complaint and discovery.
        On the "forfeiture" issue, KKW fails to cite any relevant
cases in support of its proposition.  Without such a basis in law,
we reject this contention out of hand.  On the "waiver" issue, this
contention was not raised by KKW until December 23, 1998 -- almost
three weeks after Gloria Jean's filed its notice of appeal and a
month after the district court issued its November 20, 1998 Amended
Order.  Thus, KKW's argument is not properly before the court.  See
United States v. Walker, 601 F.2d 1051, 1055 (9th Cir. 1979) ("We
are here concerned only with the record before the trial judge when
his decision was made.").
II.  Validity of the Arbitration Clause
        A.  Standard of Review
        We review de novo the district court's denial of a Motion
To Stay Proceedings Pending Arbitration.  See Haviland v. Goldman,
Sachs & Co., 947 F.2d 601, 604 (2d Cir. 1991).  We also review de
novo the district court's order granting KKW's Motion to Stay.  
While "[a]n order staying an arbitration proceeding is in
substance, and often in form, a directive to the parties to cease
the arbitration" and is a result "injunctive in character," Tejidos
de Coamo, Inc. v. ILGWU, 22 F.3d 8, 10 (1st Cir. 1994), the
district court's order is not entitled to the abuse of discretion
standard normally accorded the grant of injunctive relief.  "[I]f  
a district court's ruling rests solely on a premise as to the
applicable rule of law . . . and the facts are established or of no
controlling relevance, that ruling may be reviewed [de novo] even
though the appeal is from the entry of a preliminary injunction.  
Thornburgh v. American College of Obstetricians and Gynecologists,
476 U.S. 747, 757 (1986).

        B.  Preemption
        The central issue before this Court is whether  19-28.1-
14 of the Rhode Island Franchise Investment Act, which renders
unenforceable "[a] provision in a franchise agreement restricting
jurisdiction or venue to a forum outside [Rhode Island] . . . with
respect to a claim otherwise enforceable under this Act," is
preempted by the FAA.
        The district court ruled that the "forum selection
portion of the arbitration clause," which designates Chicago as the
situs for any arbitration proceeding, was "invalid and
unenforceable" as to KKW's statutory claims under the Rhode Island
Franchise Investment Act.  It further stated that "[t]he Federal
Arbitration Act does not preempt provisions in an agreement to
arbitrate that deal with the mechanics of arbitration, where are
they to take place, where the arbitration is to take place and the
like."
        The contracts to which the statute applies implicate
interstate commerce, thus subjecting them to the reach of the FAA.  
See 9 U.S.C.  1; see generally Socit Generale de Surveillance,
S.A. v. Raytheon European Management and Systems Co., 643 F.2d 863,
867 (1st Cir. 1981) (the term "commerce" as used in the Act is to
be broadly construed).
        Any analysis of a party's challenge to the enforcement of
an arbitration agreement must begin by recognizing the FAA's strong
policy in favor of rigorously enforcing arbitration agreements.  
See Perry v. Thomas, 482 U.S. 483, 490 (1987).  The Supreme Court
has observed that "'[t]he preeminent concern of Congress in passing
the Act was to enforce private agreements into which parties had
entered.'"  Id. (quoting Dean Witter Reynolds v. Byrd, 470 U.S.
213, 221 (1985)) (alteration in original).  In harmony with that
purpose, the Act declares "a liberal federal policy favoring
arbitration agreements."  Moses H. Cone Memorial Hosp. v. Mercury
Constr. Corp., 460 U.S. 1, 24 (1983).
        The Supremacy Clause of Article VI of the United States
Constitution prevents the states from impinging on federal law and
policy.  See Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 368
(1986).  "[A]ny state law, however clearly within a State's
acknowledged power, which interferes with or is contrary to federal
law, must yield."  Gade v. National Solid Waste Management Ass'n,
505 U.S. 88, 108 (1992) (internal quotation marks and citations
omitted).  Preemption "may be either express or implied, and is
compelled whether Congress's command is explicitly stated in the
statute's language or implicitly contained in its structure and
purpose."  Id. at 98 (internal quotation marks and citations
omitted).  "[S]tate law may nonetheless be preempted to the extent
that it actually conflicts with federal law -- that is, to the
extent that it 'stands as an obstacle to the full accomplishment
and execution of the full purposes and objectives of Congress.'"  
Volt Information Sciences, Inc. v. Board of Trustees of Leland
Stanford Junior Univ., 489 U.S. 468, 477 (1989) (quoting Hines v.
Davidowitz, 312 U.S. 52, 67 (1941)).  "[A] direct, facial
contradiction between state and federal law is not necessary to
catalyze an 'actual[] conflict' within the doctrinal parameters of
the Supremacy Clause . . . [as] a state law or regulation cannot
take root if it looms as an obstacle to the achievement of the full
purposes and ends which Congress has itself set out to accomplish."  
See Securities Indus. Assoc. v. Connolly, 883 F.2d 1114, 1118 (1st
Cir. 1989).
        "The FAA contains no express pre-emptive provision nor
does it reflect a congressional intent to occupy the entire field
of arbitration."  Volt, 489 U.S. at 477.  However, to the extent
that the Rhode Island Franchise Investment Act is construed to
prohibit any provision in a franchise agreement which designates a
forum for arbitration outside of Rhode Island, it presents an
obstacle to the achievement of the full purposes and ends which
Congress set out to accomplish in enacting the FAA -- that "courts
. . . [will] enforce privately negotiated agreements to arbitrate,
like other contracts, in accordance with their terms."  See id. at
478.
        Where, as here, "there is an agreement to arbitrate, the
FAA reflects a strong, well-established, and widely recognized
federal policy in favor of arbitration."  Vimar Seguros y
Reaseguros, S.A. v. M/V Sky Reefer, 29 F.3d 727, 730 (1st Cir.),
aff'd, 515 U.S. 528 (1995).  Section 3 of the FAA provides that if
a suit is brought on an issue referable to arbitration under a
written arbitration agreement, the court shall stay a matter until
the arbitration "has been had in accordance with the Agreement."  
9 U.S.C.  3.  Likewise,  4 of the FAA requires that a court,
"upon being satisfied that the making of the agreement for
arbitration or the failure to comply therewith is not in issue,
. . . shall make an order directing the parties to proceed to
arbitration in accordance with the terms of the agreement."  9
U.S.C.  4.
        The venue in which arbitration is to take place is a
"term" of the parties' arbitration agreements.  See Snyder, 736
F.2d at 418 ("under [the FAA], the court must order the parties to
arbitrate 'in accordance with the terms of the agreement'; one such
term of the agreement is the parties' forum selection clause").  As
we shall discuss in more detail below, see infra at C., a statute
seeking to override that term, such as the Rhode Island Franchise
Investment Act, is preempted by the FAA assuming that the FAA
applies to the agreement.  See Alphagraphics Franchising, Inc. v.
Whaler Graphics, Inc., 840 F. Supp. 708, 710 (D. Ariz. 1993)
(holding that a provision of the Michigan Franchise Investment Law
which rendered void and unenforceable "[a] provision requiring that
arbitration or litigation be conducted outside [Michigan]" imposed
"limitations on the method and manner by which the parties agreed
to arbitrate their disputes" and was preempted by the FAA).
        C.  Forum Selection Clause
        Gloria Jean's argues that the Rhode Island Franchise
Investment Act's bar of all but in-state arbitration fora violates
2 of the FAA.  We agree.
        The Supreme Court has stated:
                 We discern only two limitations on the
        enforceability of arbitration provisions
        governed by the Federal Arbitration Act: they
        must be part of a written maritime contract or
        a contract "evidencing a transaction involving
        commerce" and such clauses may be revoked upon
        "grounds as exist at law or in equity for the
        revocation of any contract."  We see nothing
        in the Act indicating that the broad principle
        of enforceability is subject to any additional
        limitations under State law.

Southland Corp. v. Keating, 465 U.S. 1, 10-11 (1984) (quoting 9
U.S.C.  2) (footnote omitted) (emphasis added).
        "[S]tate law, whether of legislative or judicial origin,
is applicable [in the sense that it would affect the validity of an
arbitration agreement, only] if that law arose to govern issues
concerning the validity, revocability and enforceability of
contracts generally."  Perry v. Thomas, 482 U.S. 483, 492 n.9
(1987).  Only "generally applicable contract defenses, such as
fraud, duress or unconscionability, may be applied to invalidate
arbitration agreements without contravening  2 [of the FAA]."  
Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).
        Here, the Rhode Island statute states that: "A provision
in a franchise agreement restricting jurisdiction or venue to a
forum outside this state . . . is void with respect to a claim
otherwise enforceable under this act."  R.I. Gen. Laws  19-28.1-
14.  Because this proscription limits the statute's application to
one type of provision, venue clauses, in one type of agreement,
franchise agreements, the statute does not apply to any contract.  
Writ simple, because  19-28.1-14 is not a generally applicable
contract defense, it is, if applied to arbitration agreements,
preempted by  2 of the FAA.
        We find more than ample support for this position in our
prior case law, and opinions from our sister circuits.  In
Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc, 723 F.2d
155 (1st Cir. 1983), cert. granted, 469 U.S. 916 (1984), aff'd in
part, rev'd in part on other grounds, 473 U.S. 614 (1985), a
plaintiff-franchisor brought suit against the defendant, one of its
dealers, seeking an order pursuant to  4 of the FAA compelling
arbitration of a dispute which had arisen between the parties.  
After the district court granted in part the motion to compel, the
dealer appealed contending that the arbitration agreement, which
specified that any arbitration was to take place in Japan, was
unenforceable.  The dealer relied on a section of the Puerto Rico
Dealers' Act, P.R. Laws Ann. tit. 10,  278, which states that
"[a]ny stipulation that obligates a dealer to adjust, arbitrate or
litigate any controversy that comes up regarding his dealer's
contract outside of Puerto Rico . . . shall be likewise considered
as violating the public policy set forth by this chapter and is
therefore null and void."  Id. at  278b-2.
        We held that federal law preempts the direct application
of  278b-2, because the ground cited in the statute for
invalidating a provision stipulating arbitration in a dealer's
contract was not among the grounds that "exist at law or in equity
for the revocation of any contract."  See Mitsubishi, 723 F.2d at
158 (quoting 9 U.S.C.  2).
        In Doctor's Associates, Inc. v. Hamilton, 150 F.3d 157
(2d Cir. 1998), the plaintiff-franchisor filed a petition to compel
arbitration of a lawsuit that the defendant-franchisee had filed in
New Jersey state court.  The franchisee opposed the petition to
compel, asserting that the arbitration clause in the parties'
franchise agreement, which specified that arbitration would be held
in Connecticut, was void and unenforceable as against the policy of
New Jersey.  The Second Circuit stated:
                 Despite the clear language in Southland,
        Hamilton [the franchisee] urges us to rely on
        Kubis & Perszyk Assocs. v. Sun Microsystems,
        146 N.J. 176, 680 A.2d 618 (1996), to
        invalidate the Agreement's arbitral forum
        selection clause.  Recognizing that state law
        may affect the validity and enforceability of
        arbitration to the extent that the state law
        applies to "the revocation of any contract," 9
        U.S.C.  2 (emphasis added), Hamilton
        maintains that the rule set forth in Kubis
        applies to all contracts, including the
        Agreement here.
                   We disagree.  Kubis did not establish a
        "generally applicable" contract defense that
        applies to "any" contract;  it invalidated a
        franchise agreement's forum selection clause
        under the New Jersey Franchise Practices Act
        because it required the franchisee to sue in
        another jurisdiction.  The Kubis decision
        applies to one sort of contract provision
        (forum selection) in only one type of contract
        (a franchise agreement).  Therefore, to the
        extent that Kubis can be read to invalidate
        arbitral forum selection clauses in franchise
        agreements, it is preempted by the FAA.

Hamilton, 150 F.3d at 163; see Management Recruiters Int'l v.
Bloor, 129 F.3d 851, 856 (6th Cir. 1997) (if the Washington
Franchise Investment Protection Act "imposed an absolute
requirement of in-state arbitration notwithstanding the parties'
agreement to arbitrate [elsewhere], its validity would be in
serious doubt as a result of the preemptive effect of the FAA").
        Section 19-28.1-14's requirement that all claims arising
under the Rhode Island Franchise Investment Act be brought in Rhode
Island does not apply to all contracts and does not establish a
generally applicable contract defense.  Its prohibition of non-
Rhode Island venues purports to restrict the enforcement of only
one sort of contract provision, forum selection clauses, in only
one type of contract, franchise agreements.  Under  2 of the FAA,
that is impermissible.
        "Courts must give effect to . . . freely-negotiated forum
selection clauses."  See Snyder, 736 F.2d at 419.  "The choice of
[ ] forum was made in an arms-length negotiation by experienced and
sophisticated businessmen, and absent some compelling and
countervailing reason it should be honored by the parties and
enforced by the courts."  M/S Bremen v. Zapata Off-Shore Co., 407
U.S. 1, 12 (1972).
        Here, Gloria Jean's and KKW chose Chicago, Illinois as
the forum for the arbitration of their disputes.  Their choice of
arbitral forum should have been honored by the district court.
Courts may not rewrite the parties' agreements and compel
arbitration of their dispute in a forum which is not one of those
enumerated in an arbitration agreement's forum selection clause.  
See Dean Witter Reynolds Inc. v. Prouse, 831 F. Supp. 328, 330
(S.D.N.Y. 1993).
                           CONCLUSION
        For the foregoing reasons, we reverse the district
court's partial denial of Gloria Jean's Motion to Stay Pending
Arbitration, and vacate its order granting KKW's Motion to Stay
Arbitration in Chicago with respect to the statutory claims under
the Rhode Island Franchise Investment Act.  Costs to appellant.

</body>

</html>