**DOCTOR'S ASSOCIATES, INC.,**
**Plaintiff–Appellee,**

v.

**Erik J. HAMILTON, Defendant–**
**Appellant.**

**Docket No. 97–9271.**

United States Court of Appeals,
Second Circuit.

Argued May 21, 1998.

Decided July 14, 1998.

David M. Duree, Reinert & Duree, St. Louis, MO (Nicholas Wocl, Tooher, Puzzuoli & Wocl, Stamford, CT, of counsel), for Appellant.

Edward Wood Dunham, Wiggin & Dana, New Haven, CT, for Appellee.

Before: MESKILL and KEARSE, Circuit Judges, and TELESCA, District Judge.*

* Honorable Michael A. Telesca, United States District Judge for the Western District of New York, sitting by designation.

MESKILL, Circuit Judge:

Defendant-appellant Erik J. Hamilton (Hamilton) appeals from an order of the United States District Court for the District of Connecticut, Dorsey, J., compelling arbitration with, and enjoining him from prosecuting a New Jersey lawsuit he filed against, plaintiff-appellee Doctor's Associates, Inc. (DAI), the franchisor of "Subway" sandwich shops. Hamilton challenges the district court's exercise of jurisdiction over this action and the court's failure to apply New Jersey law to resolve Hamilton's challenge to the franchise agreement's arbitral forum selection clause and his unconscionability defense to the arbitration agreement. For the reasons set forth below, we affirm the decision of the district court.

## BACKGROUND

DAI is a Florida corporation with its principal place of business in Fort Lauderdale, Florida and an office in Milford, Connecticut. In June 1995 Hamilton entered into a franchise agreement (the "Agreement") with DAI, permitting him to operate a Subway shop in Voorhees, New Jersey. Several provisions of the Agreement are relevant to the issues on appeal. Paragraph 10(c) of the Agreement contains an arbitration clause (and an arbitral forum selection clause), which states:

Any dispute or claim arising out of or relating to this Agreement not settled by the parties ... in accordance with the terms of this Agreement is to be submitted directly to arbitration, shall be settled in accordance with the Expedited Procedures of the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held at Bridgeport, Connecticut. Judgment upon an award rendered by the Arbitrator may be entered in any court having jurisdiction. The commencement of ... arbitration proceedings by an aggrieved party to settle any such dispute or claim is a condition precedent to the commencement of legal action by either party, except as specifically provided in this Agreement.

Paragraph 10(b) of the Agreement further provides that the Federal Arbitration Act

("FAA" or "the Act"), 9 U.S.C. §§ 1–16, applies to all claims arising out of, among other things, "applicable state franchise disclosure or franchise relationship statutes." The Agreement, under Paragraph 10(d), also provides, in pertinent part, that "the total of all permissible claims arising under or relating to this Agreement, including the breach thereof, for damages made by either party against the other shall not exceed $50,000" ("$50,000 limit" or "liability cap"). Finally, Paragraph 13 contains a choice-of-law provision, which provides that the "Agreement shall be governed by and construed in accordance with the laws of the State of Florida without reference to the body of laws governing conflicts of law."

On December 26, 1996 DAI filed a demand for arbitration with the American Arbitration Association (AAA) to resolve a dispute with Hamilton who claimed he had been fraudulently induced to enter into the Agreement. DAI requested a declaratory judgment that it had not committed fraud and that "any failure of [Hamilton's] business and loss of money was entirely [Hamilton's] responsibility."

On January 22, 1997 Hamilton filed a lawsuit against DAI in the Superior Court of New Jersey (the "New Jersey suit"), alleging that DAI fraudulently induced him to enter into the Agreement and violated the New Jersey Franchise Practices Act. See N.J. Stat. Ann. §§ 56:10–1 to 56:10–15 (West 1989). In addition to DAI, Hamilton named as defendants Michael Stocklin and William McClain, both of whom were development agents for DAI. At the time Hamilton filed his complaint, Stocklin was a New Jersey resident. Hamilton alleged that Stocklin and McClain, in conjunction with DAI, made various fraudulent misrepresentations to him concerning the past sales and other aspects of the store he eventually operated. Hamilton sought over $1 million in actual and punitive damages in addition to attorney's fees.

On March 14, 1997 DAI filed this petition to compel arbitration of the dispute between it and Hamilton and moved to enjoin Hamilton from prosecuting the New Jersey suit.

Initially, on May 21, 1997 the district court rejected all of Hamilton's defenses to DAI's petition to compel arbitration. Nonetheless, the court denied, without prejudice to renewal, DAI's petition and motion because it believed Hamilton had alleged that he was fraudulently induced into agreeing to the arbitration clause of the Agreement. The district court held that this issue had to be resolved by the state court before a stay would issue. On September 18, 1997, however, after receiving supplemental briefing on the issue, the district court determined that Hamilton's "allegations of fraud in the inducement relate[d] to the franchise agreement as a whole, rather than the arbitration clause." The court therefore concluded that Hamilton's fraud in the inducement claim should be resolved by the arbitrator and it granted DAI's petition to compel arbitration and enjoined Hamilton from prosecuting the New Jersey suit.

This appeal followed.

## DISCUSSION

On appeal, Hamilton contends that the district court erred in compelling arbitration because it had no subject matter jurisdiction. According to Hamilton, DAI did not satisfy the requirement for diversity jurisdiction because the Agreement limited damages to $50,000, and Section 4 of the Act does not provide a "federal statutory cause of action permitting the federal courts to determine the arbitrability of pending, non-removable, state damage claims." Hamilton also contends that the district court erred by failing to apply New Jersey law to determine the enforceability of the arbitral forum selection clause and to resolve his unconscionability defense to the arbitration agreement. Hamilton argues that the Agreement's choice of law provision that designated Florida law as the law governing the parties' relationship is void because it conflicts with New Jersey law. These arguments lack merit.

■ When reviewing a district court's decision regarding subject matter jurisdiction, we review factual findings for clear error and legal conclusions de novo. See Conntech Dev. Co. v. University of Connecticut Educ. Properties, 102 F.3d 677, 681 (2d Cir.1996). We review a district court's decision to compel arbitration de novo. See Doctor's Assocs. v. Distajo, 66 F.3d 438, 444 (2d Cir.1995), cert. denied, 517 U.S. 1120, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996) (Distajo I ).

## I. Subject Matter Jurisdiction

### A. Amount–in–Controversy Requirement

■ Hamilton argues that the district court erred in deciding that diversity jurisdiction existed. According to Hamilton, Paragraph 10(d) of the Agreement limits damages to $50,000, which is less than the $75,000 amount-in-controversy requirement. See 28 U.S.C. § 1332. The district court rejected this argument, observing that Hamilton, in the New Jersey suit, "seeks over $1,000,000 in damages ... well over the $75,-000 [jurisdictional] minimum. [Hamilton] has ignored the cap on damages set forth in the franchise agreement, and as a result, DAI is forced to defend a claim for over $1,000,000." The district court concluded that "[t]he damages sought in the state action ... is the amount in controversy." We agree.

■ DAI's petition to compel arbitration states that the amount in controversy exceeds $75,000. "[T]he sum claimed by the plaintiff [DAI] controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify a dismissal." A.F.A. Tours v. Whitchurch, 937 F.2d 82, 87 (2d Cir.1991) (citation and internal quotation marks omitted). In the context of a petition to compel arbitration, we have advised district courts to "look through to the possible award resulting from the desired arbitration, since the petition to compel arbitration is only the initial step in a litigation which seeks as its goal a judgment affirming the award." Davenport v. Procter & Gamble Mfg. Co., 241 F.2d 511, 514 (2d Cir. 1957); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir.1995) ("[T]he amount in controversy in a petition to compel arbitration ... is determined by the underlying cause of action that would be arbitrated."); Webb v. Investacorp, 89 F.3d 252, 257

n. 1 (5th Cir.1996) (per curiam) (noting that the amount in controversy is the difference "between winning and losing the underlying arbitration").

Here, the underlying dispute to be arbitrated is Hamilton's claim that he was fraudulently induced to enter into the Agreement with DAI, that DAI violated the New Jersey Franchise Practices Act, and that DAI bears the financial responsibility for his losses. In the New Jersey suit, Hamilton, apparently contesting the validity of the liability cap, seeks in excess of $1 million in damages, well over the $75,000 jurisdictional minimum. Should the parties proceed to arbitration and DAI prevail, DAI would have defeated a claim in excess of $1 million in damages. Therefore, the district court properly concluded that notwithstanding the liability cap in the contract, the amount-in-controversy requirement had been met as it could not be said to a "legal certainty" that the award resulting from Hamilton's claims would not exceed the $75,000 jurisdictional minimum.

We dispose of Hamilton's remaining argument that the district court improperly declined to determine the validity of the liability cap before holding that the jurisdictional minimum of $75,000 was satisfied. As the district court properly concluded, Hamilton's request in the New Jersey suit for recovery in excess of the liability cap was the decisive basis for determining the amount in controversy.

### B. *Diversity of Citizenship*

Hamilton claims that the district court erred in compelling arbitration "because 9 U.S.C. § 4 does not provide a federal statutory cause of action to determine the arbitrability of damage claims pending in a previously filed, non-removable[ ] state case." In other words, Hamilton argues that there cannot be diversity jurisdiction in DAI's federal lawsuit because of the lack of complete diversity of citizenship among the parties in the New Jersey suit. The district court rejected Hamilton's argument, concluding that diversity jurisdiction is determined by reference to the parties to the petition to compel arbitration, not the parties to the New Jersey suit. We agree.

Section 4 of the Act provides that "[a] party aggrieved by the alleged failure ... of another to arbitrate ... may petition any United States district court which ... would have jurisdiction ... of the subject matter of a suit *arising out of the controversy between the parties.*" 9 U.S.C. § 4 (emphasis added). In *Distajo I,* we interpreted "controversy between the parties" to mean the dispute between the parties to the petition to compel arbitration. *Distajo I,* 66 F.3d at 445. We reasoned that "[a]s with any federal action, diversity of citizenship is determined by reference to the parties named in the proceedings before the district court, as well as any indispensable parties who must be joined pursuant to Rule 19 of the Federal Rules of Civil Procedure." *Id.* We declined to determine diversity of citizenship by reference to the parties named in a parallel state action because "a party resisting arbitration could defeat federal jurisdiction simply by suing someone from the same state, plus the party seeking to compel arbitration, in a separate state lawsuit." *Id.*

Here it is clear from the pleadings that the parties to this petition, Hamilton, a New Jersey citizen, and DAI, a Florida corporation, are diverse. Furthermore, Hamilton makes no claim, nor do we perceive any basis for a claim, that either McClain or Stocklin, defendants in the parallel state action, are indispensable parties to the petition to compel arbitration. *See* Fed.R.Civ.P. 19; *Distajo I,* 66 F.3d at 446.

In sum, we are satisfied that the district court had diversity jurisdiction over this action and that Hamilton's jurisdictional challenges are without merit.

### II. *Application of New Jersey Law*

Hamilton argues that the district court erred by failing to apply New Jersey law to determine the enforceability of the Agreement's arbitral forum selection clause and to review his unconscionability defense. Hamilton contends that the arbitral forum selection clause is void and unenforceable as against the public policy of New Jersey and that the arbitration clause is unconscionable to the extent that it requires Hamilton to travel to

Connecticut to arbitrate and to share the costs of arbitration. Hamilton also argues that the Agreement's choice of law clause designating Florida law as the law governing the parties' relationship is void because it contravenes the public policy behind the New Jersey franchise law. In support of his challenge to the forum selection clause, Hamilton relies on *Kubis & Perszyk Assocs. v. Sun Microsystems,* 146 N.J. 176, 680 A.2d 618 (1996), in which the New Jersey Supreme Court held that a forum selection clause in a franchise agreement which designated an out-of-state *judicial* forum was presumptively invalid under the state's franchise protection act. *Kubis,* 146 N.J. at 195, 680 A.2d at 627.

The district court rejected these arguments. It distinguished *Kubis* as dealing with a clause designating a judicial forum, not an arbitral forum. The court then held that to the extent that *Kubis* applied to arbitral forum selection clauses, it was preempted by the FAA. As expressed in *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Act "foreclose[d] state legislative attempts to undercut the enforceability of arbitration agreements." *Id.* at 16, 104 S.Ct. 852. According to the district court, *Kubis* did not set forth a defense to an arbitration agreement "that exists [at] law or in equity for the revocation of any contract." (quoting *Southland,* 465 U.S. at 16 n. 11, 104 S.Ct. 852.) (internal quotation marks omitted). Furthermore, the district court rejected Hamilton's unconscionability defense to arbitration citing our holding in *Doctor's Assocs. v. Stuart,* 85 F.3d 975 (2d Cir.1996), where we rejected an unconscionability argument nearly identical to Hamilton's. *Id.* at 980–81. The district court also concluded that Hamilton was obligated to arbitrate his disputes with DAI regardless of the enforceability of the choice of law provision. On review, we affirm the district court's conclusions.

### A. Standard

Any analysis of a party's challenge to the enforcement of an arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements. *See Perry v. Thomas,* 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). The Supreme Court has observed that " '[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered.' " *Id.* (quoting *Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)) (alteration in original).

This policy favoring arbitration is reflected in the narrow role played by state law in FAA jurisprudence. The Supreme Court has declared that the FAA preempts all state laws that impermissibly burden arbitration agreements. *See Southland,* 465 U.S. at 10–11, 104 S.Ct. 852. In *Southland,* the Supreme Court reversed the California Supreme Court's holding that claims under California's franchise act were not subject to arbitration under the parties' arbitration agreement. The Supreme Court held that the FAA preempted the California act: "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* at 10, 104 S.Ct. 852; *see also Mastrobuono v. Shearson Lehman Hutton,* 514 U.S. 52, 56, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995).

Section 2 of the FAA provides that arbitration agreements subject to the FAA "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has explained the significance of this section:

[T]he text of § 2 provides the touchstone for choosing between state-law principles and the principles of federal common law envisioned by the passage of that statute: An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law,* ... "save upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the

validity, revocability, and enforceability of contracts generally.

*Perry,* 482 U.S. at 492 n. 9, 107 S.Ct. 2520 (citation omitted). In short, the Court has declared that only "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). In addition, the Supreme Court has found "nothing in the Act indicating that the broad principle of enforceability [of arbitration agreements] is subject to any additional limitations under state law." *Southland,* 465 U.S. at 11, 104 S.Ct. 852.

In light of these principles, we examine Hamilton's challenges to the enforceability of the Agreement's arbitral forum selection and arbitration clauses.

### B. *Analysis*

#### 1. *Arbitral Forum Selection Clause*

■ Hamilton contends the district court erroneously failed to apply New Jersey law to determine the enforceability of the Agreement's arbitral forum selection clause. Despite the clear language in *Southland,* Hamilton urges us to rely on *Kubis & Perszyk Assocs. v. Sun Microsystems,* 146 N.J. 176, 680 A.2d 618 (1996), to invalidate the Agreement's arbitral forum selection clause. Recognizing that state law may affect the validity and enforceability of arbitration to the extent that the state law applies to "the revocation of *any* contract," 9 U.S.C. § 2 (emphasis added), Hamilton maintains that the rule set forth in *Kubis* applies to all contracts, including the Agreement here.

We disagree. *Kubis* did not establish a "generally applicable" contract defense that applies to "any" contract; it invalidated a franchise agreement's forum selection clause under the New Jersey Franchise Practices Act because it required the franchisee to sue in another jurisdiction. The *Kubis* decision applies to one sort of contract provision (forum selection) in only one type of contract (a franchise agreement). Therefore, to the extent that *Kubis* can be read to invalidate arbitral forum selection clauses in franchise agreements, it is preempted by the FAA. *See Management Recruiters Int'l v. Bloor,* 129 F.3d 851, 856 (6th Cir.1997) (if the Washington Franchise Investment Protection Act "imposed an absolute requirement of in-state arbitration notwithstanding the parties' agreement to arbitrate [elsewhere], its validity would be in serious doubt as a result of the preemptive effect of the FAA"); *Stirlen v. Supercuts,* 51 Cal.App.4th 1519, 1543, 60 Cal.Rptr.2d 138, 153 (Cal.Ct.App.1997) (recognizing that state statutes conflicting with the pro-arbitration policy of the FAA will be preempted).

#### 2. *Unconscionability*

■ Hamilton argues that the arbitration clause of the Agreement is unconscionable because of the high costs and prejudice involved in arbitrating. According to Hamilton, he is required to travel to Connecticut to pursue his New Jersey franchise act claims and to share the costs of arbitrating before the AAA. Hamilton estimates that his arbitration fees for arbitrating the claims in his New Jersey suit will total between $28,000 and $32,000. He also argues that the AAA is biased in favor of DAI because it relies on DAI for repeat business.

In *Doctor's Assocs. v. Stuart,* 85 F.3d 975 (2d Cir.1996), we rejected an Illinois franchisee's advancement of the identical arguments made here by Hamilton. We concluded that there was nothing unconscionable about the arbitration clause because it clearly explained both the parties' responsibility for their own costs, which the franchisee was free to investigate before entering into the agreement, and that arbitration would take place in Connecticut. *Id.* at 980–81. The Agreement here is equally clear on both issues. In addition, like Hamilton, the franchisee in *Stuart* failed to present any evidence of the AAA's bias in favor of DAI. Because the Agreement here contains an arbitration clause similar to the one in *Stuart* and because Hamilton does not contest receiving notice of that clause, we are satisfied that the arbitration clause is not unconscionable.

■ Hamilton, however, argues that the district court failed to consult New Jersey law in deciding whether the arbitration

clause was unconscionable. *See Casarotto,* 517 U.S. at 687, 116 S.Ct. 1652 (State law supporting "generally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."); *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 46 (2d Cir.1993) (Section 2 of the Act "preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate." (internal quotation marks and citation omitted)). According to Hamilton, the district court instead relied exclusively on *Stuart,* which was not grounded in New Jersey law. *See Stuart,* 85 F.3d at 980 ("The purpose of the unconscionability doctrine is to prevent unfair surprise and oppression." (citations and internal quotation marks omitted)).

Without reaching the merits of Hamilton's contention, we conclude that he has waived this argument. He failed to bring New Jersey law on unconscionability to the attention of the district court or to argue that section 2 of the Act preserved general principles of state law as rules of decision. Even on appeal, Hamilton cites no New Jersey law undermining the conclusion reached in *Stuart,* nor does he make any argument that New Jersey's standard regarding unconscionability is in any material respect different from the law applied in *Stuart.*

Hamilton's final argument is that the Agreement's choice of law provision designating Florida law as the law governing the parties' relationship is void because it conflicts with New Jersey franchise law. We need not decide this question as we have already concluded that none of Hamilton's arguments based on New Jersey law has merit and no question of Florida law is presented on appeal.

In sum, we affirm the district court's rejection of Hamilton's unconscionability and choice of law arguments.

## CONCLUSION

Diversity jurisdiction exists over this action. We affirm the district court's order compelling arbitration and enjoining Hamilton from prosecuting his New Jersey suit.