PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | |
|---|---|
| FRIEDMAN'S, INCORPORATED; AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA; AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA, *Plaintiffs-Appellants,* v. JAMES DUNLAP, *Defendant-Appellee.* | No. 01-1407 |

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-00-533-2)

Argued: December 4, 2001

Decided: May 9, 2002

Before NIEMEYER, MOTZ, and TRAXLER, Circuit Judges.

---

Affirmed by published opinion. Judge Traxler wrote the majority opinion, in which Judge Motz joined. Judge Niemeyer wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Charles Leslie Woody, SPILMAN, THOMAS & BAT-TLE, P.L.L.C., Charleston, West Virginia, for Appellants. John Wil-

liam Barrett, THE GRUBB LAW GROUP, Charleston, West
Virginia, for Appellee. **ON BRIEF:** Gregory R. Hanthorn, JONES,
DAY, REAVIS & POGUE, Atlanta, Georgia; Farrokh Jhabvala, JOR-
DEN BURT, L.L.P., Miami, Florida; P. Michael Pleska, BOWLES,
RICE, MCDAVID, GRAFF & LOVE, P.L.L.C., Charleston, West
Virginia, for Appellants. John W. Barrett, THE GRUBB LAW
GROUP, Charleston, West Virginia; Brian A. Glasser, BAILEY &
GLASSER, L.L.P., Charleston, West Virginia, for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

Appellants Friedman's, Inc., American Bankers Insurance Com-
pany of Florida, and American Bankers Life Assurance Company of
Florida (collectively "Friedman's") brought an action against Appel-
lee James Dunlap under the Federal Arbitration Act, *see* 9 U.S.C.A.
§§ 1 - 16 (West 1999), to compel arbitration of Dunlap's state court
claims against Friedman's. The district court concluded that it lacked
subject matter jurisdiction because the amount in controversy did not
satisfy the $75,000 threshold for federal diversity jurisdiction. *See* 28
U.S.C.A. § 1332(a) (West 1993 & Supp. 2001). We agree this action
should be dismissed on jurisdictional grounds, but on slightly differ-
ent reasoning.

I.

James Dunlap financed a ring for purchase in the amount of
$412.66 from Friedman's, Inc., a jewelry company. Dunlap alleges
that as part of the transaction he was required to sign a retail install-
ment contract that included, without Dunlap's knowledge, additional
charges for "credit life, credit disability and/or property insurance,"
J.A. 21, and that these insurance products were provided by American
Bankers Insurance Company of Florida (ABICF) and American
Bankers Life Assurance Company of Florida (ABLACF). He filed an
action in West Virginia state court against Friedman's, four employ-

ees of Friedman's, and these insurance companies, alleging various claims under state law and seeking actual and punitive damages.[1]

The retail installment contract contained an arbitration clause that purported to eliminate punitive damages:

> 14. ALTERNATIVE DISPUTE RESOLUTION: All disputes, controversies or claims of any kind or nature between Buyer and Seller, arising out of or in connection with the sale of goods financed or refinanced pursuant to the terms of this Agreement, . . . or with respect to negotiation of, inducement to enter into, construction of, performance of, enforcement of, or breach of, effort to collect the debt evidenced by, the applicability of the arbitration clause in, or the validity of this Agreement . . . shall be resolved by arbitration in the state in which this Agreement is entered into . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. . . . No arbitrator may make an award of punitive damages.

J.A. 67.

Based on this arbitration clause, the defendants in the West Virginia state court action moved for the state court to order arbitration. Dunlap contended that he never agreed to the arbitration provision in the installment sales contract. The defendants urged the state court to order arbitration based, at least in part, on the Federal Arbitration Act.

While that motion and Dunlap's underlying claims were pending in state court, Friedman's brought this action in district court to compel arbitration of Dunlap's claims pursuant to the Federal Arbitration Act. *See* 9 U.S.C.A. §§ 1 - 16. Dunlap raised in federal court the same defense to the arbitration clause that he raised in state court, and the

---

[1]Dunlap brought the action in West Virginia state court as the named plaintiff in a class action. Only Dunlap, however, is involved in this appeal.

parties agree that the Federal Arbitration Act applies in both the state and federal actions.

Dunlap moved to dismiss Friedman's federal action to compel arbitration for lack of subject matter jurisdiction, arguing that the action did not meet the amount in controversy requirement for federal jurisdiction based on diversity of citizenship. *See* 28 U.S.C.A. § 1332(a).[2] The district court granted Dunlap's motion and dismissed the action to compel arbitration. Focusing on the bar to punitive damages contained in the arbitration clause, the district court concluded that the arbitrator would be limited to awarding an amount for actual damages and statutory penalties. The district court found that "the possible award that might reasonably result from arbitration, were the petition granted, will not exceed eight thousand dollars ($8,000)." J.A. 127. Thus, the district court held that Friedman's, ABICF and ABLACF "failed to bring forward competent proof to satisfy their burden that the amount in controversy with regard to Dunlap's claims, which might reasonably be awarded in the arbitration that they seek, exceeds [$75,000]." J.A. 127. Less than two weeks after the district court entered its order of dismissal, the West Virginia state court granted Friedman's motion to compel arbitration. Friedman's, ABICF and ABLACF now appeal the district court's dismissal of the action to compel arbitration under the Federal Arbitration Act.

## II.

The district court concluded that it lacked subject matter jurisdiction because the amount in controversy failed to reach the $75,000 threshold to federal court. We also conclude that federal jurisdiction is lacking, but we need not reach the amount in controversy issue in

---

[2]Dunlap also urged the district court to abstain from exercising jurisdiction over the case, but the district court concluded that the question of whether one of the abstention doctrines applied was moot since federal jurisdiction was lacking. Additionally, Dunlap argued that Friedman's action should be dismissed because Friedman's failed to join necessary and indispensable parties to the litigation. The district court did not address this issue either.

coming to this conclusion inasmuch as another jurisdictional defect exists.[3]

Despite getting in state court what it is now seeking in federal court — an order that Dunlap's underlying claims be submitted to arbitration — Friedman's still insists that we can and should permit his federal lawsuit to continue. Indeed, Friedman's argued to the state court that it was required by the Federal Arbitration Act to enforce the arbitration clause and order the parties to arbitration on Dunlap's claims, which is all that Friedman's argues in federal court.[4] Friedman's argues that the federal action should continue because Dunlap has appealed the state court's order to arbitrate to the West Virginia Supreme Court of Appeals. In other words, Friedman's is hedging its bets: it wants a federal order compelling arbitration at the ready in case the West Virginia Supreme Court of Appeals decides that Dunlap's claims are not subject to arbitration and reverses the decision of the lower state court.

That is not something we can do under the *Rooker-Feldman* doctrine. Although the *Rooker-Feldman* doctrine was not discussed by the parties, it too is a jurisdictional doctrine that may be raised by the court *sua sponte*, *see Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 197 n.5 (4th Cir. 1997), and may be considered for the first time on appeal, *see Plyler v. Moore*, 129 F.3d 728, 731 n.6 (4th Cir. 1997). Because the *Rooker-Feldman* doctrine is jurisdictional, we are obliged to address it before proceeding further in our analysis. *See Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 75 (D.C. 1997) ("Because it is jurisdictional, we *first* consider the

---

[3]We agree with our colleague that there was diversity and that the amount in controversy requirement was met. Even if this is so, however, federal courts have no authority to entertain this action, as we explain herein.

[4]Our understanding of what theories the parties argued in state court is drawn from the parties' representations to the panel at oral argument. Both sides, however, agreed that the effect of the Federal Arbitration Act was argued in state court. Indeed, both Friedman's and Dunlap told us that West Virginia had no arbitration act of its own. Given that there is no dispute on this critical issue, we see nothing in this regard to clarify via a remand.

*Rooker-Feldman* doctrine . . . ." (emphasis added)); *Neal v. Wilson*, 112 F.3d 351, 356 (8th Cir. 1997) (explaining that "to the extent that any portion of [the] complaint survived the jurisdictional bar of the *Rooker-Feldman* doctrine, the district court correctly ruled that *Younger* abstention was warranted").

The *Rooker-Feldman* doctrine[5] generally prohibits lower federal courts from reviewing state court decisions; "rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." *Plyler*, 129 F.3d at 731. Under the *Rooker-Feldman* doctrine, lower federal courts may not consider either "issues actually presented to and decided by a state court" or "constitutional claims that are inextricably intertwined with questions ruled upon by a state court." *Id.* (internal quotation marks omitted). Federal courts are divested of jurisdiction "where entertaining the federal claim should be the equivalent of an appellate review of the state court order." *Jordahl*, 122 F.3d at 202 (alterations and internal quotation marks omitted). *Rooker-Feldman* applies when the federal action "essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court." *Plyler*, 129 F.3d at 733. Thus, "when a party sues in federal district court to readjudicate the same issues decided in the state court proceedings, that action is in essence an attempt to obtain direct review of the state court decision . . . in contravention of *Rooker-Feldman*." *Brown & Root*, 211 F.3d at 201. The label attached to the federal court action will rarely, if ever, be important, since a party that is seeking in federal court to readjudicate an issue decided in state court is unlikely to say so.

The *Rooker-Feldman* doctrine is premised largely upon 28 U.S.C.A. § 1257(a), which "[t]he Rooker-Feldman doctrine interprets . . . as ordinarily barring direct review in the lower federal courts of a decision reached by the *highest* state court." *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 622 (1989) (emphasis added). However, we view the doctrine to also preclude review of adjudications by lower state courts as well. *See Jordahl*, 122 F.3d at 199 ("[T]he *Rooker-Feldman*

---

[5]The *Rooker-Feldman* doctrine was distilled from the Supreme Court's decisions in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

doctrine precludes not only review of adjudications of the state's highest court, but also the decisions of its lower courts."). Thus, the fact that the decision of a state court is winding its way through the state appellate system does not subject it to federal review in the meantime. *See id.* at 202 ("The *Rooker-Feldman* doctrine is in no way dependent upon the temporal procedural posture of the state court judgment . . . .").

From these general principles, it follows that Friedman's is essentially asking the federal courts to sit in review of a West Virginia state court that has already ruled on the arbitrability of Friedman's claims. In *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194 (4th Cir. 2000), a West Virginia state court determined that claims brought against Brown & Root by two employees under the West Virginia Human Rights Act were not subject to arbitration, and the West Virginia Supreme Court of Appeals affirmed the denial of Brown & Root's motion to compel arbitration. We concluded that Brown & Root's subsequent action in federal court under the Federal Arbitration Act was impermissible under the *Rooker-Feldman* doctrine because Brown & Root's "complaint [sought] precisely the same relief denied by the state trial court." *Id.* at 200. We rejected Brown & Root's argument that *Rooker-Feldman* did not apply because the state court order "was based solely on [an] interpretation of West Virginia state law," *id.* (internal quotation marks omitted), and because the state court's order did not mention the Federal Arbitration Act, *see id.* at 201. In fact, the Federal Arbitration Act had been argued during the state proceedings, and we concluded that *Rooker-Feldman* requires only "a reasonable opportunity to raise [an] Federal Arbitration Act claim in state court." *Id.* at 202.

In this case, Friedman's federal action seeks precisely the same relief that it sought — and *received* — in its motion to compel arbitration in the state court. As previously noted, Friedman's relied on the Federal Arbitration Act, at least to some extent, in its successful argument in state court. Basically, Friedman's is asking the federal courts to decide precisely the same issue already decided by a West Virginia state court.

Moreover, Friedman's has not identified any relief that an arbitration order from federal district court would afford him that the state

court's arbitration order does not. Indeed, there is no effective relief available in federal court that Friedman's has not already received in state court. The Constitution limits the jurisdiction of federal courts to actual "Cases" or "Controversies." *See* U.S. Const., art. III, § 2, cl.1. "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks omitted). The parties did not raise the issue of mootness, but the question of whether we are presented with a live case or controversy is a question we may raise *sua sponte* "since mootness goes to the heart of the Article III jurisdiction of the courts." *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 228 (4th Cir. 1997). "When circumstances change from the time the suit is filed to the time of appeal, so that the appellate court can no longer serve the intended harm-preventing function or has no effective relief to offer, the controversy is no longer live and must be dismissed as moot." *County Motors v. General Motors Corp.*, 278 F.3d 40, 43 (1st Cir. 2002) (internal quotation marks omitted). Generally speaking, one such circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim. *See Broughton v. North Carolina*, 717 F.2d 147, 149 (4th Cir. 1983) (per curiam). Thus, when a state court orders the same relief sought by the plaintiff in a parallel federal action, there is no longer a live controversy and the parallel federal claim is moot. *See Simpson v. Camper*, 974 F.2d 1030, 1031 (8th Cir. 1992) (case was moot where state court granted "precisely the same relief" that was requested in federal action); *New York v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987) (claim dismissed where separate state court action provided all relief requested in federal action).

In sum, this action does not belong in federal court. Regardless of what occurs in the West Virginia Supreme Court of Appeals, the federal courts lack jurisdiction, on the basis of *Rooker-Feldman*, mootness or both. Accordingly, we affirm the district court's dismissal for lack of jurisdiction.

*AFFIRMED*

NIEMEYER, Circuit Judge, dissenting:

On James Dunlap's motion to dismiss this action for lack of subject matter jurisdiction under 28 U.S.C. § 1332 (conferring diversity juris-

diction), the district court found and concluded that "it lack[ed] subject matter jurisdiction because the amount in controversy regarding Dunlap's individual claim has not been shown to exceed the jurisdictional threshold [of $75,000]." Accordingly, it dismissed the complaint and closed the file. Although Dunlap suggested alternatively that the district court should abstain under the doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the district court never reached that issue because of its ruling on the jurisdictional issue.

The only issue raised on appeal is whether the jurisdictional amount required by 28 U.S.C. § 1332 has been satisfied under the principles of *St. Paul Mercury Indemnity Company v. Red Cab Company*, 303 U.S. 283, 288-89 (1938) ("[T]he sum claimed by the plaintiff controls [for satisfying the jurisdictional amount] if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal" (footnotes omitted)). Without addressing the only issue presented to us, stating that "we need not reach the amount in controversy issue," the majority raises and decides the application of the *Rooker-Feldman* doctrine, based on the decisions in *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

Because I believe that the district court had subject matter jurisdiction under 28 U.S.C. § 1332, I would reverse and remand to permit the district court to decide, in the first instance, any other issues that the parties may raise, such as whether, under *Colorado River*, the district court should abstain. This is particularly prudent in this case because of the lack of record evidence about the status of state court proceedings and doubt about the applicability of the *Rooker-Feldman* doctrine.

Friedman's, Inc. and the insurance companies commenced this action under § 4 of the Federal Arbitration Act, 9 U.S.C. § 4, to compel arbitration of Dunlap's claims. This action is essentially a parallel "backup" suit to the state action where arbitration has already been compelled. Jurisdiction of this action is not conferred by the Federal Arbitration Act itself. Rather, the Act focuses the jurisdictional inquiry on whether the district court would have had jurisdiction if no

arbitration clause had been applicable. The first sentence of § 4 specifically so provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, *save for such agreement*, *would have jurisdiction under Title 28*, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (emphasis added). Thus, rather than focusing attention on the scope and nature of the arbitration commanded by agreement, § 4 directs that jurisdiction be determined by the nature and scope of the *controversy underlying* the arbitration agreement. While an arbitration agreement may limit the scope of the arbitration by limiting the amount of any award to an amount that is less than the jurisdictional amount, it is the nature and scope of the *controvers*y underlying the arbitration, not the potential arbitration award, that is considered for determining jurisdictional amount. *See Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 160-61 (2d Cir. 1998). The facts in *Hamilton* are remarkably similar to those before us, and I see no reason to reach a contrary result. The plaintiff in *Hamilton* alleged that a franchise agreement had been entered into pursuant to fraud, demanding $1 million from the franchisor, a sum well in excess of the $75,000 jurisdictional minimum. The franchise agreement, however, had an arbitration clause limiting damages in arbitration to $50,000. In concluding that the underlying controversy, not the scope of the agreed-to arbitration, determined the jurisdictional amount, the Second Circuit instructed that district courts must "look through" the arbitration award to the underlying cause of action to determine whether the amount in controversy exceeds $75,000. *Id.* at 160.

In the case before us, the controversy centered around (1) Dunlap's purchase of a ring from Friedman's, Inc., (2) the financing of the purchase, and (3) the inclusion of credit life and property insurance. Alleging that the purchase of insurance was concealed from him, Dunlap asserted a host of statutory violations, claiming penalties and other damages, including punitive damages. While the strict, contrac-

tual amounts involved were less than $75,000, Dunlap's request for punitive damages led to his claim for over $1 million.

There is no evidence in the record that Dunlap's claim in the underlying controversy was not made in good faith, and there is no suggestion by either the parties or the district court that it was "a legal certainty that [Dunlap's] claim [was] really for less than the jurisdictional amount." *St. Paul Mercury*, 303 U.S. at 289. Indeed, unless Friedman's, Inc. and the insurance companies are successful in compelling arbitration, there would be no legal limitation on the amount of Dunlap's claim. Rather than focusing on the underlying controversy, however, the district court focused on what could have been recovered from the arbitration, noting that the arbitration did not provide for punitive damages. Accordingly, the district court erroneously dismissed this case for lack of subject matter jurisdiction, overlooking the express command of 9 U.S.C. § 4 that jurisdiction be determined from the underlying controversy "save for such [arbitration] agreement."

Not only has the majority failed to address subject matter jurisdiction — a necessary, first requirement, *see Steel Co. v. Citizens for Better Government*, 523 U.S. 83, 94 (1998) ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes" (quoting *Ex Parte McCardle*, 7 Wall. 506, 514 (1869))) — it has also introduced an issue not decided below and not briefed by the parties on appeal, a particularly risky proposition when it is doubtful that the *Rooker-Feldman* doctrine even applies in this case. First, Dunlap, who would be the party to assert the doctrine, won dismissal of his case on subject-matter jurisdictional grounds. He, therefore, would not be asserting what the majority has asserted for him. Moreover, he could not be seeking to apply the *Rooker-Feldman* doctrine because it was the plaintiffs (Friedman's, Inc. and the insurance companies) who filed this action as a parallel backup to the state court's decision, not Dunlap. This action cannot fit the premise that it was commenced to review a state court judgment.

Second, we have no record of the status of state court proceedings or the arbitration ordered in those proceedings.

Finally, because the *Rooker-Feldman* doctrine addresses the route to be taken for *appeals* of state court judgments, denying any route that takes appeals to lower federal courts, the doctrine addresses, with rare exception, efforts to review final state judgments. *See Feldman*, 460 U.S. at 482 (articulating the principle: "a United States District Court has no authority to review *final judgments* of a state court in judicial proceedings. Review of such judgments may be had only in this Court" (emphasis added)). This action does not seek to review any state judgment; it seeks to obtain in federal court *the same* relief already obtained in state court. The fundamental purpose of the *Rooker-Feldman* doctrine — to prohibit appeals to federal court *to review* a state court judgment — cannot be fulfilled in an action, not seeking to review a state court judgment, but to reinforce it with a parallel federal judgment.

Recognizing the circumstances that undermine application of the *Rooker-Feldman* doctrine — i.e., the plaintiff does not seek *to review* a state court judgment but rather to seek the same relief — the majority moves for cover, without explanation, to the doctrine of mootness. The majority opinion makes the transition as follows:

> Friedman's federal action seeks precisely the same relief that it sought — *and received* — in its motion to compel arbitration in the state court.

> \* \* \*

> Friedman's has not identified any relief that an arbitration order from federal district court would afford him that the state court's arbitration order does not. Indeed, there is no effective relief available in federal court that Friedman's has not already received in state court.

The majority then concludes that this case is moot.

But the majority's application of the doctrine of mootness is even more profoundly flawed than its application of the *Rooker-Feldman* doctrine. Mootness can apply only "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the out-

come." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). The issue of whether the parties are required to arbitrate in this case is still "live" because the issue is still pending before the West Virginia Supreme Court of Appeals. Moreover, neither party has raised mootness as a defense and the record does not contain any evidence that supports mootness. As such, I respectfully submit that we cannot rely on that doctrine to dismiss the appeal.

But even if the West Virginia Supreme Court were to affirm the order to arbitrate this case, then the appropriate principle to apply would be either *res judicata* or full faith and credit, as provided for under 28 U.S.C. § 1738. As the record is now constituted, however, we can only conclude that a live controversy continues to exist between the parties.

Thus, the majority's inappropriate application of two distinct doctrines does not somehow eliminate the deficiency in applying either doctrine. Neither the *Rooker-Feldman* doctrine nor the doctrine of mootness applies in this case, and there is no precedent to support application of either to the circumstances of this case.

Judicial restraint and wisdom urge that we address the issue raised on appeal and remand this case to the district court to consider and decide any other matter that the parties may raise. Any other course unnecessarily threatens our judicial system's concept of dual sovereignty.

Because I would reverse the district court's judgment on jurisdictional grounds and remand, I respectfully dissent.