KELLOGG, BROWN & ROOT,
INC., Plaintiff,

v.

Teddy L. BRAGG, Defendant.

No. CIV.A. 2:02–1023.

United States District Court,
S.D. West Virginia,
Charleston Division.

March 19, 2003.

Bryan R. Cokeley, Esquire, Christopher L. Slaughter, Keith Lively, Steptoe & Johnson, Charleston, WV, W. Carl Jordan, Vanessa Clem, Vanessa Griffith, Vinson & Elkins, Houston, TX, for Plaintiff.

Joseph C. Cometti, Esquire, Charleston, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

Pending is Defendant's motion to dismiss and Plaintiff's Petition to Compel Arbitration and Prohibit Judicial Proceedings. Defendant has neither responded to the Petition, nor replied to the Plaintiff's response to the dispositive motion.[1] The Court **DENIES** Defendant's motion and **GRANTS** Plaintiff's Petition.

## I. FACTUAL BACKGROUND

Defendant Teddy L. Bragg is a West Virginia resident. Plaintiff Kellogg, Brown & Root, Inc. (KB & R) is a Delaware corporation with its principal place of business in Texas. Bragg was employed by KB & R and its predecessor periodically over a ten (10) year period. He worked as a pipefitter on a maintenance project for Dupont in Belle, West Virginia.

According to the affidavit of Roy Eagle, the highest ranking KB & R representative on site in Belle, some of the products manufactured by DuPont are shipped to other DuPont sites outside West Virginia. Also, the KB & R Belle project receives administrative support from the Houston home office, including both human resources and payroll help.

Bragg was laid off in December 2001. When Bragg commenced employment, he executed a one-page agreement providing pertinently:

> I also agree that I will be bound by and accept as a condition of employment, the terms of the Brown & Root Dispute Resolution Program [ (DRP) ], which are herein incorporated by reference. I understand the [DRP] requires as its last step the binding arbitration of all employment disputes.

(Pl.'s Pet. to Compel, Ex. 1 at 1.)

While the Court does not have a complete copy of the DRP, Bragg does not dispute it contains the following components:

- Either the KB & R or the employee can demand arbitration with either AAA, CPR, or JAMS;
- An arbitrator is selected based upon mutual preferences;
- Witnesses are subject to cross examination;
- An experienced and neutral arbitrator is used;
- The employee is required to pay only a $50.00 processing fee, with all additional fees paid by KB & R;
- Protection against retaliation if the DRP is used;
- The ability to resort in the first instance to relief from the Human

---

1. Defendant also did not participate in the recent planning meeting with opposing coun-sel. A unilateral Report of the Parties' Planning Meeting has been submitted by Plaintiff.

Rights Commission, the EEOC or the NLRB; and

- Since the DRP's inception in 1993, the company has brought in outside experts on three occasions to provide an independent evaluation of the DRP to assure independence and confidential assistance.

(*Id.*, Ex. 3.)

Interestingly, the Question and Answer section for the DRP, provides:

If you're covered by the Program and you file a lawsuit, [the Company] attorneys will go before the judge, tell the judge of the ... [DRP], and ask that the case be dismissed and sent back to the [DRP].

(*Id.*)

Following his layoff, Bragg instituted an action in the Circuit Court of Kanawha County on May 24, 2002. Bragg asserts his layoff was the result of age discrimination. KB & R has petitioned pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 4 to compel arbitration and to effectively prohibit the state action.

## II. DISCUSSION

### A. *Motion to Dismiss*

Defendant's motion to dismiss asserts:

[The state complaint] ... *does not ask for any money damages at all, but instead seeks what amounts to equitable relief.* Incredibly, Brown & Root wants this court to "order Bragg to refrain from prosecuting his pending lawsuit" in state court. In other words Brown & Root has filed this action for the sole purpose of stopping the real plaintiff, Teddy Bragg from prosecuting his state law claim in state court.

(Mot. to Dismiss at 2.)

Defendant thus appears to challenge whether the amount-in-controversy requirement has been satisfied. The polar star by which the amount in controversy is measured in the Section 4 setting was recently set in place by Judge Niemeyer, relying on Second Circuit precedent:

*[Title 9 U.S.C.] § 4 directs that jurisdiction be determined by the nature and scope of the controversy underlying the arbitration agreement....* While an arbitration agreement may limit the scope of the arbitration by limiting the amount of any award to an amount that is less than the jurisdictional amount, *it is the nature and scope of the controversy underlying the arbitration, not the potential arbitration award, that is considered for determining jurisdictional amount.* See Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157, 160–61 (2d Cir. 1998).... [T]he Second Circuit instructed that district courts must "look through" the arbitration award to the underlying cause of action to determine whether the amount in controversy exceeds $75,000. *Id.* at 160.

*Friedman's, Inc. v. Dunlap,* 290 F.3d 191, 199 (4th Cir.2002)(Niemeyer, J., dissenting).[2]

■ The Court is further guided by the general principle governing amount-in-controversy determinations for cases originally filed in federal court. *See St. Paul Mercury Indemnity Company v. Red Cab Company,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938)("[T]he sum claimed by the plaintiff controls [for satis-

**2.** Although the quoted portion appears in the dissent, it is reasonable to conclude the panel majority accepted Judge Niemeyer's reasoning. *Friedman's,* 290 F.3d at 195 n. 3 ("We agree with our colleague that there was di-

versity and that the amount in controversy requirement was met. Even if this is so, however, federal courts have no authority to entertain this action, as we explain herein.")

fying the jurisdictional amount] if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." (footnotes omitted)).

■ According to an affidavit filed with the response to the motion to dismiss, Bragg's accrued wages since his termination have reached $40,000.00. He further seeks compensation in the state action for lost employment benefits, medical coverage, social security contributions, emotional distress damages, and recompense for loss of his ability to enjoy life, along with other damage elements. This action is plainly one involving substantial damages in excess of the jurisdictional amount rather than one seeking purely equitable relief.[3] Further, it certainly does not appear to a legal certainty Bragg's state claim is for less than the jurisdictional minimum.

Accordingly, the motion to dismiss is **DENIED**.

### B. Petition to Compel

The FAA was enacted in 1924 to " 'revers[e] centuries of judicial hostility to arbitration agreements by plac[ing] arbitration agreements upon the same footing as other contracts.' " *Shearson/Am. Express Inc. v. McMahon,* 482 U.S. 220, 225–26, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (quoting *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 510–11, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)) (internal citations and quotations omitted, alterations in original). The FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

The FAA's legislative history is replete with Congress's view that arbitration is more efficient than litigation. *Hightower v. GMRI, Inc.,* 272 F.3d 239, 241 (4th Cir.2001). Accordingly, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

Section 4 provides pertinently:

A party aggrieved by the alleged ... refusal of another to arbitrate under a written agreement for arbitration may

---

**3.** Assuming equitable relief is Bragg's primary aim, the jurisdictional minimum would yet be satisfied. The Court notes its decision on the matter:

> The Supreme Court has held "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." See, e.g., *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (emphasis added). This open-ended characterization has spawned another split of authority, which developed concerning the "value" to whom, plaintiff or defendant.
> Long in advance of the present, increasing trend, our Court of Appeals adopted the either-viewpoint rule, concluding the value

of injunctive [and declaratory] relief is properly judged from the viewpoint of either party. See, e.g., *Government Employees Ins. Co. v. Lally,* 327 F.2d 568, 569 (4th Cir.1964)("the amount in controversy is the pecuniary result to either party which that judgment would produce" and explicitly referencing its use of "[t]he test of 'value to either party' ") . . . .

*McCoy v. Erie Ins. Co.,* 147 F.Supp.2d 481, 492 (S.D.W.Va.2001). The Court of Appeals has since concurred with this Court's interpretation of *Lally* and its continued viability. *See Dixon v. Edwards,* 290 F.3d 699, 710 (4th Cir.2002). If reinstatement and back pay were ordered in Bragg's favor, it would certainly produce significant expense to KB & R beyond the $75,000.00 minimum.

petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action ... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

■ Our Court of Appeals recently observed:

In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Whiteside v. Teltech Corp.,* 940 F.2d 99, 102 (4th Cir.1991).

*Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 501 (4th Cir.2002). The Court thus examines whether the four factors are satisfied here.

■ First, the parties plainly are involved in a dispute arising from the employment relationship. Hence, the first requirement is satisfied.

Second, the Court looks to whether there is a written agreement including an arbitration provision purporting to cover the dispute. As noted previously, KB & R's one-page "Assignment Authority Sup-

plement" executed by Bragg states in the first paragraph:

In consideration of my employment, I agree that my assignment, job or compensation can be terminated with or without cause, with or without notice at any time at the option of either the Company or myself. *I also agree that I will be bound by and accept as a condition of employment, the terms of the Brown & Root Dispute Resolution Program, which are herein incorporated by reference. I understand the [DRP] requires as its last step the binding arbitration of all employment disputes.*

(Pl.'s Pet. to Compel, Ex. 1 at 1 (emphasis added).)

In *Adkins,* similar to the instant case, the Court of Appeals looked to "West Virginia contract law to determine whether the employment application mandates arbitration of Adkins' claims as a contractual matter." *Id.* at 501. In finding a binding agreement to arbitrate, the Court reasoned "Because 'no consideration [is required] above and beyond the agreement to be bound by the arbitration process' for any claims brought by the employee, *Johnson v. Circuit City Stores,* 148 F.3d 373, 378 (4th Cir.1998), Labor Ready's promise to arbitrate its own claims is *a fortiori* adequate consideration for this agreement." *Id.* As noted, the DRP applies with equal force to KB & R. Accordingly, the *Adkins* analysis applies here, especially in light of Bragg's apparent refusal or inability to suggest the invalidity of the Agreement or its coverage of the present dispute.

Neither does Bragg dispute the third and fourth requirements are satisfied. Interstate commerce is plainly implicated by KB & R's relationship with the DuPont plant and Bragg's previous employment there. Also, one must consider DuPont's undeniable presence in the stream of com-

merce. Finally, Bragg plainly has refused to arbitrate.

Having satisfied the necessary prerequisites, KB & R is entitled to enforcement of the Agreement. Accordingly, the Court **GRANTS** the Petition to Compel and **ORDERS** the parties to proceed to arbitration in accordance with the terms of the Agreement and DRP.

■ Our Court of Appeals has observed "When a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the *FAA commands the federal courts to stay any ongoing judicial proceedings,* 9 U.S.C. § 3, and to compel arbitration, *id.* § 4." *Hooters of America, Inc. v. Phillips,* 173 F.3d 933, 937 (4th Cir.1999)(emphasis added). Consistent with *Phillips,* the Court **STAYS** the pending state court action until further Order.

This action is **STAYED** and **RETIRED** to the inactive docket, pending completion of the required arbitration.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and to publish a copy on the Court's public website at http://www.wvsd.uscourts.gov.

### JUDGMENT ORDER

In accordance with the Memorandum Opinion and Order entered today, the Court **ORDERS** as follows:

1. The motion to dismiss is DENIED;

2. The Petition to Compel is GRANTED;

3. The Court STAYS the pending state court action until further Order;

4. The parties shall proceed to arbitration in accordance with the terms of the Agreement and DRP; and

5. This action is STAYED and RETIRED to the inactive docket, pending completion of the required arbitration.

The Clerk is directed to send a copy of this Judgment Order to counsel of record.