**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-1266**

———————

CHARLES SMALLEY; PAMELA BALL, On behalf of themselves and
as a class,

                    Plaintiffs - Appellants,

         v.

SHAPIRO & BURSON, LLP; JOHN S. BURSON, Esq.; WILLIAM M.
SAVAGE, Esq.; JASON MURPHY, Esq.,

                    Defendants – Appellees,

         and

KRISTINE D. BROWN, Esq.; ERIK W. YODER, Esq.; GREGORY N.
BRITTO, Esq.,

                    Defendants.

———————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  J. Frederick Motz, Senior District
Judge.  (8:11-cv-00906-JFM)

———————

Argued: March 22, 2013            Decided: April 16, 2013

———————

Before WILKINSON and DAVIS, Circuit Judges, and Jackson L.
KISER, Senior United States District Judge for the Western
District of Virginia, sitting by designation.

———————

Vacated and remanded by unpublished opinion.  Senior Judge Kiser
wrote the opinion, in which Judge Wilkinson and Judge Davis
joined.

———————

**ARGUED:** Ian Stumpf, JR HOWELL & ASSOCIATES, Washington, D.C., for Appellants. Robert A. Scott, BALLARD SPAHR, LLP, Baltimore, Maryland; William Joseph Carter, CARR MALONEY, PC, Washington, D.C., for Appellees. **ON BRIEF:** Glenn A. Cline, BALLARD SPAHR, LLP, Baltimore, Maryland; Bizhan Beiramee, BIZHAN BEIRAMEE, ESQ., P.C., McLean, Virginia, for Appellees Shapiro & Burson, LLP, John S. Burson, Esq., and William M. Savage, Esq.

---

Unpublished opinions are not binding precedent in this circuit.

KISER, Senior District Judge:

Appellants ask us to hold that their federal causes of action are not barred under Maryland claim preclusion law because the claims could not have been asserted in the state foreclosure proceedings. Because we decide that the district court lacked jurisdiction to reach the merits of the case under the Rooker-Feldman doctrine, we do not need to resolve that question. Accordingly, we vacate the district court's judgment and remand the case with instructions to dismiss Appellants' actions without prejudice.

## I.

Charles Smalley and Pamela Ball (collectively "Appellants"), are African-American residents of Maryland. Appellee Shapiro & Burson, LLP, is a Maryland law firm. In 2009, Appellee foreclosed on Appellants' homes on behalf of Appellants' mortgage lenders.

Appellee Shapiro & Burson conducts a large number of foreclosures in Maryland and other jurisdictions. Appellees John Burson, William Savage, and Jason Murphy were all attorneys for Appellee Shapiro & Burson.[1] Burson, Savage, and Murphy were

---

[1] "Appellees" refers to Shapiro & Burson, LLP, John Burson, William Savage, and Jason Murphy collectively, all of whom were parties to the action in the district court.

all appointed as substitute trustees for the purpose of conducting the foreclosures at issue. (J.A. 150.)

Pamela Ball

The foreclosure proceeding against Appellant Pamela Ball was instituted in November of 2007. Appellant Ball "never sought an injunction to stop the sale, nor did she file any exceptions to the sale, as she could have done pursuant to Md. Rule 14-305[,] to challenge the conduct of the foreclosure auction." (Br. for Appellees pg. 5.) When Shapiro & Burson employees (not the substitute trustees) filed the Order to Docket Foreclosure against Appellant Ball, the signing affiant swore that Appellees were the note holders and that they had the right to foreclose on the property. Additionally, the affiant swore that a copy of the note was attached to the Order to Docket and that the note was a true and accurate copy of the original. Appellants maintain that none of those statements were true. (See J.A. 152.) Appellants allege that Appellees were never in possession of the note. (Id.)

The same month that the Order to Docket was filed, Appellees sold Appellant Ball's property, allegedly without ever seeing or possessing the promissory note as represented. (Id.) In December of 2007, Appellees sent Appellant Ball an eviction notice, ordering her to vacate her property within three days; she complied. (Id.) Several months after insisting Appellant

4

Ball vacate the property, Appellees informed the state court that the Order to Docket was defective, and they filed a "Motion to Accept Lost Note Affidavit" at that time. (See id.) Appellant Ball did not oppose the motion. (See J.A. 235-41.) Despite the defective Order and original affidavit, the state court ratified the foreclosure. (J.A. 152.)

On December 23, 2008, over a year after Appellees sold Appellant Ball's home, the state court auditor filed the auditor's report pursuant to Md. Rule 14-305. (J.A. 236, 245-46.) The report set forth, among other things, the distribution of the proceeds from the sale, including the fees charged by Appellee Shapiro & Burson. (J.A. 245-46.) Appellant Ball filed an exception to this report by way of a "Motion for Exception to the Audit." (J.A. 247-48.) On January 12, 2009, the state court issued a final order of ratification of the audit and closed the case. (J.A. 249.)

Appellant Ball subsequently appealed the order of the state court ratifying the auditor's report. (See J.A. 251.) The Maryland Court of Special Appeals held that Appellant Ball's appeal was procedurally premature because her January 21, 2009, Motion to Nullify the Judgment operated as a motion to alter or amend that judgment and, because that motion had not been ruled upon, the appeal was premature. (See J.A. 255.) The Court of Special Appeals additionally held, however, that the principles

5

of *res judicata* and collateral estoppel barred Appellant Ball's allegations of wrongdoing related to the report of sale because that judgment became final when the appellate court issued its mandate dismissing the appeal. (Id.)

On remand, following a March 4, 2011, hearing on Appellant's Ball's outstanding motions, the state court denied the audit motion and ratified the audit. (See J.A. 258.) No appeal was filed. (J.A. 234-41.) Appellant Ball did file a "Motion for Emergency Hearing," claiming that the state court should not have ratified the audit because it never ruled on several motions. She sought to re-open the case and filed an "Amendment to the Open Motion Dated January 21, 2009." (J.A. 259-62.) In that motion, Appellant Ball re-asserted allegations related to the Lost Note Affidavit. (See id.) Following a hearing, the state court denied the motion. (See J.A. 240.) Appellant Ball appealed, but the state court was affirmed. (See Br. of Appellee Addendum 1.)

Charles Smalley

On May 21, 2009, Appellees filed an Order to Docket Foreclosure against Appellant Charles Smalley. (J.A. 159.) Appellee Jason Murphy allegedly signed the Order, but Shapiro & Burson employees had prepared the affidavit. The Order included an affidavit that asserted that the substitute trustee had verified that the party ordering the foreclosure was "the owner

6

of the Note that is the subject of this foreclosure action and that the copy of the Note filed in this foreclosure case is a true and accurate copy of said Note." (J.A. 159-60.) Although the affidavit certified that Barclays Capital Real Estate, Inc., ("Barclays") was the noteholder, the Note itself indicated on its face that it was payable to Fremont Investment & Loan. (J.A. 160.) Appellees did not produce any record of a transfer of ownership of the mortgage prior to the filing of the Order to Docket Foreclosure. (See id.) Appellant Smalley alleges that Appellees did not take any steps to confirm that Barclays was actually the noteholder. (See id.)

The substitute trustees ultimately sold Appellant Smalley's property at a foreclosure sale in April 2010. (Id.) Prior to the sale, Appellant Smalley did not seek an injunction to stop the sale, nor did he move to dismiss the foreclosure action pursuant to the applicable state rules. (See J.A. 263-64.) The state court ratified the sale on October 21, 2010. Just as in Appellant Ball's case, Appellees received a commission on the sale. In addition, the legal fees Appellees charged were passed on to Appellants from their respective foreclosures.

On June 25, 2010, Appellant Smalley filed a "Memorandum of Law—Bank Fraud," in which he challenged the foreclosure. (See J.A. 264.) The substitute trustees filed a Motion to Strike, arguing that the time for filing exceptions has lapsed. (See

7

id.) The state court granted the Motion to Strike on October 20, 2010. (Id.) The next day, the state court ratified the foreclosure sale. (See J.A. 264-65.) On January 14, 2011, the state court ratified the audit, which included the distribution from the sale, as well as all fees charged by Appellee Shapiro & Burson. (See J.A. 269-70.) Appellant Smalley never appealed the ratification of the sale or the ratification of the auditor's report. (See J.A. 263-66.)

On January 24, 2011, Appellant Smalley filed a 15-count declaratory judgment complaint in the state court against his mortgage lender, Barclays, and the purchaser, 50 by 50 REO, LLC. (See J.A. 271-89.) In that lawsuit, Appellant Smalley alleged, among other things, that Barclays was not the holder of Appellant Smalley's promissory note and that the Smalley foreclosure action was brought by entities that had no interest in the Smalley property, the note, or the mortgage. (See J.A. 274.) Appellant Smalley further alleged that Barclay's representation of an ownership interest as a basis for instituting the foreclosure, the foreclosure action itself, and "all of the representations and activities undertaken to commence, execute, and finalize the sale" constituted unfair and deceptive trade practices under the Maryland Consumer Protection Act. (See J.A. 276-77.) The state court dismissed the action

8

on *res judicata* grounds, and the Maryland Court of Special Appeals affirmed. (See J.A. 268; Appellee's Rule 28(j) filing.)

In March of 2011, state prosecutors launched an investigation into the alleged "robo-signing" practices of Appellee Shapiro & Burson. (J.A. 156.) In cooperation with the criminal investigation, José Portillo, a paralegal who worked at Shapiro & Burson from April 2008 until February 2011, came forward with details regarding practices Appellees allegedly directed him to undertake. (See J.A. 44-47, 153.) Portillo detailed how he and other paralegals were directed to prepare deeds and affidavits for Appellee William Savage to sign. A different attorney who did not work for Shapiro & Burson, however, routinely signed Appellee Savage's names to trustee's deeds that "transferr[ed] the foreclosed property back to the lender who purchased the property at auction." (J.A. 44.) In an affidavit, Portillo included several deeds that were purportedly signed by Appellee Savage but were not, in fact, signed by him, as well as several deeds which actually were signed by Appellee Savage. (See J.A. 45, 48-102.) Notaries, such as Portillo, were then instructed to notarize the deeds. None of the allegedly fraudulent documents included with the Portillo affidavit, however, concerned any Appellant's foreclosure.

On April 7, 2011, shortly after Appellees' "robo-signing" practices came to light, Appellants sought to bring a class action in the United States District Court for the District of Maryland. (See J.A. 147-182.) In the federal complaint, Appellants contended that the fees imposed were "excessive, unreasonable, and inappropriate in light of the lack of due diligence and the pattern of unlawful, fraudulent conduct [Appellees] undertook in reporting that those fees were actually earned." (J.A. 157.) Although they did not claim any aspect of the affidavits submitted to the state court were "false," they alleged that Appellants' lack of diligence in confirming the facts to which they attested was "unfair and unconscionable" and that the signatures on the affidavits were the result of "rampant forgery." (J.A. 173-74.) They contended that the imposition of excessive and unearned fees, as well as the submission of false affidavits to the state court, violated their federal rights. (See, e.g., J.A. 167.) Appellants asserted claims for fraud, violations of the Maryland Consumer Protection Act, and violations of the federal RICO statute, Fair Debt Collection Practices Act, Fair Housing Act, and Civil Rights Act. (See J.A. 166-180.) Appellees filed a motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Appellants' claims were barred by the doctrine of claim preclusion. The District Court granted the

motion and dismissed the action. Appellants then instituted this appeal.

## II.

The dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed under the *de novo* standard of review. See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). In its review, the Court "construes the evidence in the light most favorable to the non-movant," E.E.O.C. v. Seafarers Int'l Union, 394 F.3d 197, 200 (4th Cir. 2005), and "should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff," Mylan Labs., 7 F.3d at 1134. Additionally, although Appellants bring this action on behalf of a purported class, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." O'Shea v. Littleton, 414 U.S. 488, 493-95 (1974).

Although the district court dismissed this action on claim preclusion grounds, Appellees have raised a jurisdictional issue that we are required to address before reaching the merits. See Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). Appellees argue that this case is barred by the Rooker-Feldman doctrine, which precludes a federal court from deciding

11

what is, in essence, an appeal of a state court judgment. See Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994).

## III.

This Court has consistently treated the Rooker-Feldman doctrine as jurisdictional, and "[b]ecause the Rooker-Feldman doctrine is jurisdictional, we are obliged to address it before proceeding further in our analysis." Friedman's, Inc. v. Dunlap, 290 F.3d 191, 195-96 (4th Cir. 2001); see also Am. Reliable Ins. Co. v. Stillwell, 336 F.3d 311, 316 (4th Cir. 2003); Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 198-99 (4th Cir. 2000); Jordahl v. Democratic Party of Va., 122 F.3d 192, 199 (4th Cir. 1997). Under the Rooker-Feldman doctrine, a "party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court." Johnson, 512 U.S. at 1005-06. This is so because Congress has vested the power to entertain an appeal of a state court judgment only with the Supreme Court. See 28 U.S.C. § 1257(a); Brown & Root, Inc., 211 F.3d at 198-99. "A litigant may not circumvent these jurisdictional mandates by instituting a federal action which, although not styled as an appeal, 'amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'" Stillwell, 336 F.3d at 316 (quoting Plyler v. Moore, 129 F.3d 728, 733 (4th Cir. 1997)). "The controlling question in the

12

Rooker-Feldman analysis is whether a party seeks the federal district court to review a state court decision and pass upon the merits of that state court decision, not whether the state court judgment is presently subject to reversal or modification. Put another way, if 'in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual,' Rooker-Feldman is implicated." Jordahl, 122 F.3d at 202 (quoting Ernst v. Child & Youth Servs., 108 F.3d 486, 491 (3d Cir. 1997)). The doctrine applies not only to matters directly addressed by the state court, but also to "claims which are 'inextricably intertwined' with state court decisions." Brown & Root, Inc., 211 F.3d at 198 (quoting District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486-87 (1983)).

Although Appellants do not seek to "undo" the state court judgment foreclosing on their homes, permitting their case to go forward would, in essence, hold that the state court judgments which affirmed the legal fees and commissions and held the allegedly false affidavits sufficient to warrant foreclosure was in error. This is not proper under Rooker-Feldman because their federal causes of action are "inextricably intertwined" with the state court foreclosure actions. This prong of the doctrine "bars a claim that was not actually decided by the state court

13

but where 'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'" Brown & Root, Inc., 211 F.3d at 198 (quoting Plyler, 129 F.3d at 731). If Appellants are not seeking a review of the state court's judgment, their success on the merits would necessitate a finding that the state court "wrongly decided the issues before it." Id. Accord Harper v. Chase Manhattan Bank, 138 F. App'x 130, 133 (11th Cir. 2008) (unpublished) ("Harper's claims under the . . . FDCPA [Fair Debt Collection Practices Act] . . . were inextricably intertwined with the foreclosure proceeding in state court . . . ."). Here, the alleged source of Appellants' harm is shielded by state court judgments that necessarily rested on a decision about which Appellants now complain; therefore, Appellants are limited to whatever relief they are afforded in the state court system.

Other courts have relied on Rooker-Feldman to bar the same or similar causes of action Appellants asserted below. See Harper, 138 F. App'x at 132-33 (dismissing Fair Debt Collection Practices Act claims); Figueroa v. Merscorp, Inc., 766 F. Supp. 2d 1305, 1316 (S.D. Fla. 2011) (dismissing a RICO claim under Rooker-Feldman); Distant v. Bayview Loan Servicing, LLC, No. 09-61460-CIV, 2010 WL 1249129, at *3 (S.D. Fla. Mar. 25, 2010) (unpublished)("Although plead as conspiracy claims . . . , Plaintiff is clearly asking this Court to invalidate the state

14

court action by ruling that the state court foreclosure judgment is somehow void.  Under the <u>Rooker-Feldman</u> doctrine, . . . this Court lacks subject matter jurisdiction, as Plaintiff seeks a *de facto* appeal of a previously litigated state court matter.");  <u>Simpson v. Putnam Cnty. Nat'l Bank of Carmel</u>, 20 F. Supp. 2d 630, 633 (S.D.N.Y. 1998) (holding that a foreclosure judgment was not subject to federal review under <u>Rooker-Feldman</u>, and noting that "the fact that plaintiff alleges that the . . . foreclosure judgment was procured by fraud and conspiracy [does not] change that result.");  <u>Smith v. Wayne Weinberger, P.C.</u>, 994 F. Supp. 418, 424 (E.D.N.Y. 1998) (rejecting a plaintiff's "thinly-veiled effort to invalidate the State Court's foreclosure judgment, in contravention of <u>Rooker-Feldman</u>," by alleging fraud).

Moreover, Appellants admit that the state court decision is the source of their harm.  In their brief, Appellants state: "In the present case, Plaintiffs' causes of action under the FDCPA [Fair Debt Collection Practices Act], MCPA [Maryland Consumer Protection Act], FHA [Fair Housing Act], and CRA [Civil Rights Act] did not accrue until the foreclosure actions were completed."  (Br. for Appellants pg. 15.)  If Appellants allege they did not possess a cognizable legal injury until the state court entered its judgment, it follows that they allege that the state court judgment was the source of their harm, as no

15

relevant conduct occurred after the judgments were entered. Thus, because Appellants allege that the state court's judgment caused their injury,[2] their actions are clearly barred under Rooker-Feldman.  See Johnson, 512 U.S. at 1005-06 ("[A] party losing in state court is barred from seeking what in substance would be an appellate review of the state judgment in a United States district court, **based on the losing party's claim that the state judgment itself violates the loser's federal rights**." (emphasis added)).

In Exxon Mobil Corp. v. Saudi Basic Indus. Corp., the Supreme Court sought to refocus lower courts that had extended the Rooker-Feldman doctrine "far beyond the contours of the Rooker and Feldman cases . . . ."  544 U.S. 280, 283 (2005). The Court held that the Rooker-Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name:

---

[2] We recognize that Appellants are placed in a precarious position.  They argue their claims did not exist until the state court action was finalized, which they contend precludes a finding that their claims could have been raised in the state court proceedings.  See Anyanwutaku v. Fleet Mortg. Grp., Inc., 85 F. Supp. 2d 566, 570 (D. Md. 2000) (noting that the doctrine of *res judicata*, or claim preclusion, applies to "relitigation of matters previously litigated between the parties and their privies, as well as those claims that could have been asserted and litigated in the original suits.").  In an effort to avoid a ruling that their claims were precluded by *res judicata* because they did not exist at the time of the state foreclosure action, however, they have essentially admitted that the Rooker-Feldman doctrine bars their actions.

16

cases brought by state-court losers complaining of injuries by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. That is exactly what Appellants seek here. Their primary complaints are: the imposition of attorneys' fees; the award of a commission; and the allegedly fraudulent, but not false, affidavits. By affirming the foreclosures, the Maryland state court necessarily passed judgment on the amount of the attorneys' fees and commissions and the content of the affidavits. Permitting this action to proceed would necessarily invite the District Court to "review and reject[] those judgments." Id. Because Rooker-Feldman prohibits this, the District Court lacked subject-matter jurisdiction.

At oral argument, Appellants pointed us to two Sixth Circuit Court of Appeals cases which they maintain establish that their actions are not barred by Rooker-Feldman. We are not swayed by the facts or conclusions of Todd v. Weltman, Weinberg & Reis Co., LPA, 434 F.3d 432 (6th Cir. 2006), or Brown v. First Nationwide Mortgage Corporation, 206 F. App'x 436, 437 (6th Cir. 2006) (unpublished).

We are, however, persuaded by the logic espoused by the Southern District of Florida in Figueroa v. Merscorp, Inc., 766 F. Supp. 2d 1305 (S.D. Fl. 2011), a post-Exxon Mobil decision

17

addressing a foreclosed party's attempt to hold their lender accountable under the federal RICO statute. Like Appellants here, Figueroa filed a purported class action months after the defendants foreclosed on his home. Id. at 1310. The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that the district court lacked jurisdiction under Rooker-Feldman. Id. at 1315. After a lengthy discussion of the doctrine and Exxon Mobil, see id. at 1315-20, the district court concluded that the plaintiff's action was barred because it was "inextricably intertwined" with the state court foreclosure judgment. Id. at 1321-22. The district court held that the suit was barred "because Plaintiff's claims can only succeed if the Court implicitly or explicitly determines the Florida state court wrongly decided the foreclosure issue. . . . The only way Plaintiff (and putative class members) could have been 'damaged' by the loss . . . of their homes is if those foreclosures were wrongful. In fact, Figueroa concedes as much in his Opposition, acknowledging he suffered no damages until the Florida state court entered foreclosure judgment." Id. at 1323-24. The same is true here; Appellants explicitly argue that they were not damaged until the state court entered its foreclosure judgments and the Orders adopting the auditors' reports. Moreover, like Appellants, "Figueroa's federal claims can only succeed to the extent the [state] court erred, and the Court cannot grant

18

Figueroa his requested relief without disturbing the [state] foreclosure judgment. It is for the state appeals court and the U.S. Supreme Court to tell the state court it was wrong. This Court has no such role." Id. at 1324.

Examining Appellants' contentions, it is clear that the injuries they complain of, regardless of when they accrued, stem from the state court judgments. The "unfair" but truthful affidavits only have relevance or effect once adopted by the state court; the fees and commissions were only imposed on Appellants when the state court adopted the auditors' reports that accepted them. "The injur[ies] alleged by [Appellants] in all of these allegations [are] a direct result of the judicial order and fail[] to assert an 'independent claim' that would bring the case outside the ambit of Rooker-Feldman." Reguli v. Guffee, 371 F. App'x 590, 596 (6th Cir. 2010) (unpublished) (citing Exxon Mobil, 544 U.S. at 293).

Because we conclude that the district court did not have subject matter jurisdiction, we are compelled to conclude that the judgment of the district court must be vacated. The court below held Appellants' actions were barred by *res judicata*. Such a decision amounts to a dismissal on the merits. See, e.g., Thomas v. Consolidation Coal Co., 380 F.2d 69, 80 (4th Cir. 1967). The district court did not have jurisdiction to enter a judgment on the merits, so the matter must be vacated

19

and remanded to the district court with instructions that it be dismissed without prejudice for want of jurisdiction. Accord Durbin v. Dubuque, 348 F. App'x 294, 295 (9th Cir. 2009) (unpublished); Beth-El All Nations Church v. City of Chicago, 486 F.3d 286, 294 (7th Cir. 2007).

## IV.

Appellants seek to re-litigate matters that are "inextricably intertwined" with judgments entered by the state court in the foreclosure actions. Such actions are barred by the Rooker-Feldman doctrine. For this reason, the district court lacked subject matter jurisdiction over Appellants' actions, and thus lacked the authority to reach the merits of the case and dismiss the action with prejudice. We therefore vacate the judgment of the district court and remand this case with instructions that it be dismissed without prejudice for lack of jurisdiction.

IT IS SO ORDERED.