**Philippe LAJAUNIE, et al., Plaintiffs,**

v.

**SAMUELS AND SON SEAFOOD CO., INC., et al., Defendants.**

**No. 14–CV–2793 (VM).**

United States District Court,
S.D. New York.

Signed Dec. 12, 2014.

Michael Francis Ferrari, Robert V. Ferrari/Attorney at Law, New York, NY, for Plaintiffs.

Edward Simon Benson, Joseph J. Gulino, Nicoletti, Gonson, Spinner & Owen, LLP, New York, NY, Thomas Robert Dominczyk, Maurice & Needleman, P.C., Flemington, NJ, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiffs Philippe Lajaunie, a resident of the State of New York ("Lajaunie"), and 15 John Corp., a corporation organized and existing under the laws of the State of New York (together with Lajaunie, "Plaintiffs"), filed the Summons and Complaint involved in this action in the Supreme Court of New York, New York County (the "State Court") against defendants Samuels and Son Seafood Co., Inc. ("Samuels"), a corporation organized and existing under the laws of the Commonwealth

of Pennsylvania, Saldutti, LLC, a limited liability company organized and existing under the laws of the State' of New Jersey, and Robert L. Saldutti, a resident of the State of New Jersey (together with Saldutti, LLC, "Saldutti Defendants"). The Saldutti Defendants, with the consent of Samuels, filed a Notice of Removal, removing the case from the State Court to this Court.

Defendants jointly moved to dismiss the action in its entirety under Federal Rule of Civil Procedure 12(b)(6) asserting failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction.[1] Plaintiffs opposed the motion. For the reasons described below, the motion to dismiss is GRANTED.

## I. BACKGROUND [2]

The claims Plaintiffs assert against Samuels and the Saldutti Defendants (collectively, "Defendants") stem from a prior litigation: Samuels's action against Plaintiffs in the Philadelphia Municipal Court, First Judicial District of Pennsylvania, filed in May 2010 under claim number SC–10–05–14–4971 ("Samuels Action"). In the Samuels Action, Samuels, represented by Robert L. Saldutti, claimed $5,015.57 for goods sold. In June 2010, the Philadelphia Municipal Court (the "Municipal Court") entered a default judgment against Plaintiffs, among others, in the total sum of $6,759.71. Plaintiffs petitioned to strike the default judgment, which petition was denied in January 2012 after a proceeding before the Municipal Court. Plaintiffs then appealed to the Philadelphia County Court of Common Pleas (the "County Court"). In April 2012, the County Court entered an order denying Plaintiffs' appeal.

In the present action, Plaintiffs seek damages for the allegedly fraudulent conduct of Defendants in obtaining the judgment against Plaintiffs in the Samuels Action before the Municipal Court. According to Plaintiffs, Samuels sold and delivered goods to a Washington D.C. restaurant known as Les Halles Washington LLC—a separate entity from 15 John Corp., a New York corporation doing business under the name "Les Halles" in New York City and also a customer of Samuels. Plaintiffs allege that Defendants knew that 15 John Corp. was a separate and distinct entity from Les Halles Washington LLC, were aware that 15 John Corp. had fully paid all indebtedness to Samuels, and intentionally deceived the Municipal Court in seeking a judgment against 15 John Corp. when, in fact, all money was due from Les Halles Washington LLC. Plaintiffs claim that, as part of the alleged fraud, Defendants intentionally deceived the Philadelphia Municipal Court by using Lajaunie's personal guaranty of 15 John Corp. for amounts owed by Les Halles Washington LLC. Plaintiffs allege that, as a result of the alleged fraudulent conduct, their credit rating is damaged. Plaintiffs are seeking $500,000 in damages, and an additional $500,000 in punitive damages.

---

1. The Court notes, however, that Rule 12(b)(6) applies only to defenses of failure to state a claim. As such, the Court will consider Defendants' defense that the Court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

2. Except where otherwise noted explicitly, the factual summary below is derived from the Complaint and the documents cited or relied upon for the facts pled therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir.2008) (citing GICC Capital Corp. v. Technology Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir.1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.2002). Except where specifically quoted, no further citation will be made to the Complaint or the documents referred to in it.

## II. SUBJECT MATTER JURISDICTION

▮ At the outset, this Court must determine whether it has subject matter jurisdiction over the instant action, in which the Plaintiffs seek damages for the allegedly fraudulent conduct of Defendants in obtaining an earlier judgment in the Municipal Court. Determining the existence of subject matter jurisdiction is a "threshold matter." *See Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte.*" *Lyndonville Savings Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700 (2d Cir.2000). "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir.2008) (internal quotation marks, citations, and alteration omitted), *aff'd on other grounds,* 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010). In resolving disputed jurisdictional facts, the court can refer to evidence outside of the pleadings. *See Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000).

▮ Both parties have addressed the applicability of the *Rooker–Feldman* doctrine to the present dispute and whether this Court lacks subject matter jurisdiction. The doctrine—derived from *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)—divests lower federal courts of subject matter jurisdiction over "claims that effectively challenge state court judgments." *Kropelnicki,* 290 F.3d at 128.

For the reasons set forth below, the Court finds that it lacks subject matter jurisdiction under *Rooker–Feldman* to entertain the allegations in the Complaint.

### A. The *Rooker–Feldman* Doctrine

▮ Under *Rooker–Feldman,* federal courts are barred from reviewing the judgments of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). The *Rooker–Feldman* doctrine has a statutory predicate in 28 U.S.C. § 1257, which grants appellate review over state court decisions solely to the Supreme Court and thus, by negative inference, not to district courts established in the same legislation as courts of original jurisdiction. *See id.* at 292, 125 S.Ct. 1517. Nor does a federal district court have subject matter jurisdiction to hear claims "inextricably intertwined" with final determinations of state judicial proceedings. *Feldman,* 460 U.S. at 486–87, 103 S.Ct. 1303; *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 185 (2d Cir.1999).

The Supreme Court has repeatedly emphasized the narrow grounds of *Rooker–Feldman.* In *Exxon,* the Supreme Court found that the doctrine "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." 544 U.S. at 284, 125 S.Ct. 1517. Subsequently, in *Skinner v. Switzer,* 562 U.S. 521, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011), the Supreme Court again noted the doctrine's "narrow ground," recognizing that it has applied the doctrine only twice—"*i.e.,* only in the two cases from which the doctrine takes its

name." *Id.* at 1297. The Supreme Court explained:

> Both cases fit this pattern: The losing party in state court filed suit in a U.S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment. Alleging federal-question jurisdiction, the plaintiffs in *Rooker* and *Feldman* asked the District Court to overturn the injurious state-court judgment.

*Id.* (footnote omitted).

Following *Exxon,* the Second Circuit identified four requirements that must be met for *Rooker–Feldman* to divest a district court of subject matter jurisdiction:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

*Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005) (internal quotation marks, footnote, and alterations omitted). The first and fourth of these requirements are "procedural," and the second and third are "substantive." *Id.*

### a. Procedural Requirements

██ Here, the two procedural requirements are easily met: first, Plaintiffs lost in state court, and second, the judgment they challenge was rendered before the district court proceedings commenced. Initially, Plaintiffs were named defendants in the Municipal Court action, which was filed on May 14, 2010. Plaintiffs lost in that case pursuant to a default judgment against them issued on June 29, 2010. Thereafter, Plaintiffs moved to open and strike the judgment in the Municipal Court. After a hearing, the Plaintiffs' mo-

tion was denied. Plaintiffs appealed to the County Court, and their motion was denied on April 17, 2012. Almost two years later, on March 5, 2014, Plaintiffs filed the instant action in the New York State Court.

██ The *Hoblock* procedural requirements are not defeated here by the addition of Robert L. Saldutti and Saldutti, LLC as defendants. Plaintiffs argue that the Saldutti Defendants would not be subject to *Rooker–Feldman* since they "were not parties to the underlying state court action." (Opp'n Mot. 5.) Presumably, Plaintiffs are relying on *Lance v. Dennis,* 546 U.S. 459, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006), which found that a federal plaintiff was not barred under *Rooker–Feldman* by a different party's loss in state court. However, as other courts in this District have noted, it is an "entirely different circumstance in which Plaintiff, having lost in state court, names additional parties." *Roberts v. Perez,* 2014 WL 3883418 (S.D.N.Y. Aug. 7, 2014). "Such gamesmanship is not enough to get around the *Rooker–Feldman* bar." *Id.*

### b. Substantive Requirements

Both substantive requirements prescribed by *Hoblock* are also met in this action. First, Plaintiffs "complain of injuries caused by a state-court judgment." *Hoblock,* 422 F.3d at 82 (internal quotation and alterations omitted). Plaintiffs seek to distinguish their case on the basis of the relief sought here: that an action for damages for the alleged fraud is not an injury "caused by a state-court judgment" nor "inextricably intertwined" with the state court proceedings in the Pennsylvania courts. (Opp'n Mot. 4–5.)

██ The Court is not persuaded by Plaintiffs' argument. The entirety of Plaintiffs' allegations involve conduct that happened during the course of the Penn-

sylvania state court proceedings. Plaintiffs allege Defendants claimed in those proceedings that Lajaunie personally guaranteed payments to Samuels; that attorneys' fees were owed under the agreement containing the guaranty; that the agreement and personal guaranty were used fraudulently to justify the judgment personally against Lajaunie; and that Defendants fraudulently procured the default judgment at a time when they knew that Les Halles Washington LLC was out of business. All of these allegations are directly tied to the state court judgment. As another court in this District has stated: "Most telling for purposes of *Rooker–Feldman*'s causation requirement, Plaintiff suffered no tangible injuries prior to the issuance of the state-court judgment." *Roberts*, 2014 WL 3883418, at \*3. Here, the causal link is clear and direct. If the state court judgment did not exist, the Plaintiffs would not have the damaged credit rating they complain of, and there would be no compensable injury. To this extent, Plaintiffs' injury asserted in this action is "inextricably intertwined" with the Pennsylvania state court judgment. *Feldman*, 460 U.S. at 486–87, 103 S.Ct. 1303.

■ As for the second *Hoblock* substantive requirement, Plaintiffs' allegations clearly "invite district court review and rejection of that judgment." *Hoblock*, 422 F.3d at 82 (internal quotation and alterations omitted). Plaintiffs attempt to escape this requirement by arguing that *Rooker–Feldman* does not apply since "plaintiff's claims were never presented in state court proceedings and the plaintiff did not have an opportunity to present the claims in these proceedings." (Opp'n. Mot. 5.) However, "a federal plaintiff cannot escape the *Rooker–Feldman* bar simply by relying on a legal theory not raised in state court." *Hoblock*, 422 F.3d at 87. And courts have repeatedly applied *Rooker–Feldman* to state court default judg-

ments. *See, e.g., Neshewat v. Salem*, 194 Fed.Appx. 24 (2d Cir.2006) (unpublished) (affirming District Court decision that it lacked jurisdiction under *Rooker–Feldman* over state court default judgment); *Ballyhighlands, Ltd. v. Bruns*, 182 F.3d 898 (2d Cir.1999) (unpublished) ("*Rooker–Feldman* applies to default judgments just as it does to other types of judgments.").

■ In any event, as was the case in *Kropelnicki*, Plaintiffs in the case at hand did have "ample opportunity to raise this claim before the state court" by moving to reopen the judgment. 290 F.3d at 129. In this litigation, despite having moved to vacate the default judgment in Municipal Court, Plaintiffs did not raise the issue of fraud in the Pennsylvania state courts. Further, under Pennsylvania law, litigants have the right to set aside judgments based on fraud. *See Reading v. Gazzam*, 202 Pa. 231, 51 A. 1000 (1902); *Township of Perkiomen v. Mest*, 513 Pa. 598, 603, 522 A.2d 516 (1987). *See also Johnson*, 189 F.3d at 187 (citing favorably the proposition that "plaintiff should seek remedy in state court, rather than federal court, to undo challenged judgment because '[i]t is settled law that a court has inherent power to vacate its own judgment on proof that fraud has been perpetrated on the court.'" (*quoting Levitin v. Homburger*, 932 F.Supp. 508, 518–19 (S.D.N.Y.1996), *aff'd*, 107 F.3d 3 (2d Cir.1997))).

By choosing to attack the fraud in federal district court instead, Plaintiffs' claim "seeks in effect to set aside the state court's order." *Johnson*, 189 F.3d at 187.

### c. Fraudulent Procurement Exception

Finally, this Court agrees with other courts in this District in finding that there is no fraudulent procurement exception to the *Rooker–Feldman* doctrine—a question that the Second Circuit has not directly

answered and one that has divided the Courts of Appeals which have considered it.[3] Yet, the Second Circuit opinions that do touch on the existence of a fraud exception, as well as opinions by other courts in this District, lead this Court to decline to find that a fraudulent procurement exception to *Rooker–Feldman* exists.

The Second Circuit "has never recognized a blanket fraud exception to *Rooker–Feldman.*" *Johnson,* 189 F.3d at 186–87. *See also Castiglione v. Papa,* 423 Fed. Appx. 10 (2d Cir.2011) (affirming district court decision that *Rooker–Feldman* applied to state law claims related to the alleged fraudulent probate of a will); *Grumbkow v. Greenpoint Bank,* 132 Fed. Appx. 913 (2d Cir.2005) (affirming District Court's holding that *Rooker–Feldman* applied to plaintiff's claim that defendant allegedly used fraudulent methods in attaining a state foreclosure order); *Ford v. United States Dep't. of Treasury I.R.S.,* 50 Fed.Appx. 490 (2d Cir.2002) (same).

In *Kropelnicki,* the Second Circuit again declined to create a fraud exception to *Rooker–Feldman*—even when a party sought to challenge a state default judgment. 290 F.3d at 128–29. There, the plaintiff, a putative debtor, brought an action in federal district court against the creditor's attorney in connection with a state court debt collection action, alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA") and various state statutes. One of the plaintiff's claims was that the creditor's attorney violated FDCPA by "proceeding to judgment against her in a state court debt collection action despite having represented to [plaintiff's] attorney that they would not advance the litigation without first contacting him." *Id.* at 122.

Addressing this claim, the Second Circuit found the alleged misrepresentation "inextricably intertwined with the state court judgment in the underlying debt collection action because [plaintiff] had an opportunity to raise this claim on her motion to open the judgment in state court." *Id.* at 128. The Circuit Court further noted that the plaintiff had availed herself of the four-month state statutory period to open a default judgment for "reasonable cause," but still failed to mention the defendants' alleged misrepresentation in her motion. As the Second Circuit found, were a court to accept plaintiffs' argument about defendants' alleged misrepresentations, the "ruling would effectively declare the state court judgment fraudulently procured and thus void" and would be "precisely the result that the *Rooker–Feldman* doctrine seeks to avoid." *Id.* at 129.

Other courts in this District have similarly declined to recognize a fraudulent procurement exception to *Rooker–Feldman.* In *Anctil v. Ally Financial, Inc.,* 998 F.Supp.2d 127 (S.D.N.Y.2014), the court applied *Rooker–Feldman* where plaintiffs sought compensatory damages for the loss of their homes through the defendants' allegedly fraudulent procurement of foreclosure judgments. The *Anctil* court noted that a "handful of district court decisions from the Eastern District of New York have recognized a fraudulent

---

**3.** The Sixth and Ninth Circuits, for example, do recognize such an exception, whereas the Fourth and Eighth Circuits do not. *Compare McCormick v. Braverman,* 451 F.3d 382 (6th Cir.2006) (finding *Rooker–Feldman* did not apply to claim that state court judgment was procured through fraud) *and Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1140–43 (9th Cir. 2004) (finding the doctrine does not bar a federal suit alleging a cause of action for extrinsic fraud on a state court) *with Smalley v. Shapiro & Burson, LLP,* 526 Fed.Appx. 231, 236 (4th Cir.2013) (unpublished) (finding allegations of fraud were "inextricably intertwined" with state court foreclosure action) *and Fielder v. Credit Acceptance Corp.,* 188 F.3d 1031, 1035–36 (8th Cir.1999) (finding no fraud exception exists).

procurement exception," *id.* at 138, but declined to follow the reasoning of those courts, because, in part, those decisions rely on case law originating from a single Sixth Circuit case, *In re Sun Valley Foods,* 801 F.2d 186, 189 (6th Cir.1986). As the *Anctil* court explained, the Sixth Circuit in *Sun Valley* "does not discuss—nor does it appear to even realize—that it is creating new law in importing a *res judicata* exception into the *Rooker–Feldman* doctrine." *Id.* at 138. "As other courts have noted, the important rationale behind a fraud-on-the-court exception to *res judicata* doctrine has no application to *Rooker–Feldman.*" *Id.* at 139. Instead, plaintiffs who wish to argue that a judgment was fraudulently procured must do so in the state court that rendered that judgment. *Id.* Further, the *Anctil* Court "[saw] nothing in the *Exxon Mobil* decision that would affect the presence or absence of an exception to *Rooker–Feldman* for allegations of fraud on the state court in procuring the prior judgment." *Id.* at 138.

The *Anctil* court's reasoning was followed in *Roberts v. Perez,* 2014 WL 3883418 (S.D.N.Y. Aug. 7, 2014) ("[C]ourts in this District have consistently held that claims that a state-court judgment was fraudulently procured are subject to *Rooker–Feldman.*" (citing *Anctil,* 998 F.Supp.2d at 138–39)). This Court agrees with the reasoning of *Anctil* and *Roberts* in concluding that no fraudulent procurement exception to *Rooker–Feldman* exists. Therefore, this Court holds that it lacks subject matter jurisdiction to hear the claims Plaintiffs assert in the instant dispute.

In light of the Court's holding that it lacks subject matter jurisdiction over Plaintiffs' claims, the Court need not address Defendants' other arguments in favor of dismissal. *See, e.g., Roberts,* 2014 WL 3883418, at *4.

## IV. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the joint motion (Dkt. No. 17) of defendants Samuels and Son Seafood Co., Inc., Saldutti, LLC, and Robert L. Saldutti is **GRANTED.**

The Clerk of Court is directed to terminate the joint motion to dismiss (Dkt. No. 17) and to close this case.

**SO ORDERED.**